## Montenegro-Riehm Music Company v. Board of Education of Louisville.

(Decided April 12, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. By-laws and Rules Adopted by Public Bodies.—Force and Effect of.—Where a public corporation pursuant to legislative authority enacts rules and by-laws for its government in the conduct of the public affairs committed to its care, these by-laws have the force and effect of statutory regulations, and are binding upon the public body as well as all persons dealing with it, although such persons may have no notice of the existence of the by-law.

2. Public Corporations—Persons Dealing With, Must Take Notice of Powers of.—Persons dealing with a public corporation are bound at their peril to know that contracts made by the officials of such corporation are made in the mode pointed out in the act creating the body, and a contract not so made is not binding or enforcible.

3. Public Corporations—Effect of Rule Requiring Advertisement for Bids.—Where a by-law adopted by a public corporation pursuant to statutory authority provided that no contracts exceeding $500.-00 should be made, except after advertisement, this by-law was mandatory, and a contract attempted to be made by the corporation without advertising in the manner provided by the by-law was void.

4. Mandamus.—Under section 477 of the Civil Code, the writ of mandamus is only allowed against an officer who fails or refuses to perform some duty imposed upon him by law. It was not intended to aid a plaintiff in the enforcement of a mere contract right or to take the place of the other remedies provided by law for the adjudication of disputed claims.

J. W. S. CLEMENTS for appellant.

ARTHUR M. RUTLEDGE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

For many years previous to January 1st, 1911, the public schools of Louisville were under the control of a public corporation styled the School Board, a body created by an act of the Legislature, but on January 1st, 1911, the power and duties of the Louisville School Board ceased by virtue of an act of the Legislature, and the appellee, Board of Education, took charge of the schools, succeeding to all of the rights and liabilities of its predecessor, the Louisville School Board.

The appellant corporation is a manufacturer of and dealer in musical instruments, doing business in Louisville.

In September, 1909, the Louisville School Board adopted a resolution appropriating $2,500 for the purchase of pianos for use in the public schools. The resolution making the appropriation provided for the appointment of a committee consisting of members of the board to visit various dealers in the city and secure propositions for pianos that the board proposed to buy. In accordance with this resolution, the committee visited the store of the appellant company, and as a result thereof on February 23, 1910, it submitted to the School Board the following proposition:

"We very respectfully inform you of a recent visit to our ware rooms made by the committee appointed to purchase pianos for various schools. * * * As we understand it, the resolution passed by the School Board calls for fifteen pianos, for which you are authorized to pay $2,500. In accordance with this, we beg to submit the following proposition: For the sum of $2,500 we agree to furnish the Louisville School Board with fifteen Montenegro-Riehm pianos, in either mahogany, oak or walnut cases, the same to contain ivory keys and to be equipped with the Seaverns actions. We agree to hold ourselves responsible for any defects in workmanship, materials or performance which may develop within the next fifteen years. We further agree to keep them in tune for a period of one year free of charge. We also propose to furnish you, without extra cost, a suitable stool and scarf, or, in lieu of scarf, a rubber hood, with each instrument.

Thanking you for your consideration of the above, and trusting it may meet with the approval of both yourselves and the committee, we are,

Respectfully,
MONTENEGRO-RIEHM MUSIC Co."

The proposition thus submitted was not taken up or acted upon by the School Board until December 6, 1910, at which time a meeting of the board was held and the "Supplies Committee" consisting of four members recommended to the board "that the contract for fifteen pianos for various schools be awarded to the Monte-negro-Riehm Music Company at a cost of $2,500, as per their proposition of February 23, 1910." It appears from the record of the meeting that the chairman of the board ruled that the resolution of the committee proposing the purchase of the pianos was "out of order," because it had not been reported to the Business Director five days previous to the meeting of the board, and no further action was taken in respect to the matter at this meeting; but, at a called meeting of the board held on December 27, 1910, the "Supplies Committee" again submitted to the board the recommendation concerning the purchase of the pianos that had been presented on December 6th, 1910, and this recommendation was adopted by a majority of the board—the effect of which was to accept the proposition submitted by the appellant company. When the appellee Board of Education came into office a few days later, the appellant company tendered to it the fifteen pianos in compliance with its proposition, but the board refused to accept the pianos and ignored entirely the action of the School Board in reference to their purchase. Thereupon, the appellant company brought this suit against the appellee Board of Education, in which it expressed its ability and willingness to furnish the pianos in accordance with its contract, and asked for a mandamus compelling the appellee to accept them and to pay to it the contract price of $2,500.

For answer to this suit, the Board of Education presented a number of reasons why the relief prayed for should not be granted.

Upon a hearing of the case by the judge of the circuit court to whom the law and facts were submitted, the petition was dismissed, and this appeal prosecuted as a result thereof.

Section 2949 of the Kentucky Statutes, which is one of the sections relating to the powers and duties of the Louisville School Board, provides that the board shall have:

"Power to govern themselves by such rules and regulations for school purposes as they deem proper, not to conflict with this act, nor the Constitution and laws of this State, nor of the United States; with power to contract and be contracted with, sue and be sued, to defend and be defended in all courts." * * *

In section 2950 it is provided that the—

"Rules and by-laws shall be adopted by the board within thirty days after organization succeeding each election. They shall not be amended, suspended or repealed, except upon affirmative vote of not less than two-thirds of the members in office, upon yea and nay vote of the board, entered upon its records."

In pursuance of the direction and authority to adopt rules and by-laws, the board previous to 1909 adopted an elaborate set of rules and by-laws for its government in the conduct and management of the schools, and these rules and by-laws were in force from the time of their adoption until the board was legislated out of office on January 1st, 1911. Among the rules so adopted was one providing that—

"No purchase of supplies or of materials of any kind shall be made from any one person, firm or corporation in any year to an amount in the aggregate of more than $500, except upon bids previously advertised for and accepted."

It is conceded that there was no advertisement of the resolution authorizing the purchase of the pianos specified therein, and one of the chief grounds relied upon to defeat the right of the appellant company to obtain the relief sought is the failure of the School Board to observe the requirements of the by-laws in respect to advertising.

It is insisted by counsel for the School Board that observance of this by-law was indispensible to the validity of a contract proposing to expend in the purchase of pianos more than $500 and that the appellant company was chargeable with notice of this by-law and had no contract right that it could enforce against the board. On the other hand, the argument of counsel for the appellant company is that this by-law should be treated as a mere directory parliamentary rule enacted by the board for the convenient transaction of its business that a majority of the board had the right at any time to disregard. That whether it be treated as directory or

mandatory in its operation upon members of the board and persons who entered into engagements with the board with notice of its existence, it could not affect the appellant company that had no notice that such a by-law had been enacted or was in force.

Passing for the present the question of the right to proceed by mandamus, the respective contentions of counsel bring up for decision two questions that will be considered together: First, was the appellant company that was without notice of this by-law affected by its existence; and, second, was the by-law binding on the board and a compliance with its provisions necessary to constitute a valid and enforcible contract between the board and the appellant company.

The Louisville School Board was a public corporation created by statute for public purposes. In ascertaining its power and authority, we must look to the statute creating it and from which it derives all the rights enjoyed or exercised by it. The legislative act creating the board was general in its nature and left practically all the details of its management of the schools to be regulated by rules and by-laws to be adopted by the board. The act creating the board conferred upon it the authority to enact by-laws and also prescribed how the by-laws and rules adopted might be amended, suspended or repealed, and we think it was the purpose of the Legislature in granting this authority to give to such rules and by-laws as the board adopted the force and effect of statutory provisions. Or, to state it differently, when the Legislature authorized the school board to adopt rules and by-laws for the government of the schools, it was intended that these rules and by-laws should be as binding upon the board, until they were amended, or repealed, in the manner pointed out in the statute, as the statutory provisions creating the board. The power conferred by the statute was more than a mere direction to enact parliamentary rules for the government of the board, because in the absence of statutory authority the board had the right to adopt such parliamentary rules for the convenient dispatch of its business as it might deem proper. This is a power that is inherent in every public and private body, and mere parliamentary rules are of course not designed to be and are not binding upon any person or persons except the members of the body that adopts them; and,

they may be amended, suspended or repealed at the
pleasure of the body, or in any manner that it has pre-
scribed for this purpose. We also think that there is a
wide difference in the force and effect of rules and by-
laws adopted by a private corporation for the conduct of
its personal corporate affairs and the rules and by-laws
adopted in pursuance of legislative authority by a pub-
lic corporation engaged in the performance of a public
duty. In disposing of the question before us, however,
it is not necessary to consider the effect of rules and by-
laws of a private corporation or to determine to what
extent such rules and by-laws affect persons dealing with
private corporations who have no notice of their exist-
ence. We are only concerned with the effect of the rules
and by-laws adopted by public corporations to enable
them to better carry out the purpose of their creation
and existence, and we have no doubt that the material
reasonable rules and by-laws of a public corporation
made and adopted in pursuance of legislative authority
and within the scope of the powers of the public corpor-
ation to aid it in the discharge of its public duties, have
the same binding force and effect upon it and all persons
with whom it does business as the statute under which it
derives its powers.

In Combs v. Bonnell, 109 S. W., 898, and Mefford v.
Brown, 132 Ky., 201, this court recognized the binding
force and effect upon public bodies of by-laws adopted
by them in pursuance of legislative authority for the
purpose of carrying out the public duties imposed upon
them by the statute, and held in effect that by-laws so
adopted had the force and effect of statutory regulations.

Giving then to this by-law the effect of a statute, it is
well settled that the appellant was charged with notice
of its existence, whether it had in fact notice or not. In
Craycraft v. Selvage, 10 Bush, 696, it was said that per-
sons dealing with a municipal corporation are bound at
their peril to know that the contracts made by the of-
ficials of such corporation are made in the mode pointed
out by the charter and ordinances, and if they fail they
must suffer the consequences. To the same effect is
Floyd County v. Oswego Bridge Co., 143 Ky., 693; City
of Newport v. Schoolfield, 142 Ky., 287; Trustees of
Bellevue v. Hohn, 82 Ky., 2.

The remaining question is, did the failure to observe
this by-law invalidate the contract, or, in other words,

was observance of the by-law essential to create the contract. It will scarcely be questioned that a rule or bylaw providing that no contract shall be made involving the expenditure of money, except after public advertisement, is of the utmost importance to the public. It gives the public the opportunity to buy what is needed in its service in the open market at the lowest and best bid. It places the public purchaser on an equality with the private purchaser, and gives to the public all the advantages and benefits in the purchase of articles that result from active competition in the open market, and enables it to secure what it needs at fair prices, free from personal considerations. In addition to this, it removes from public officials the temptation to use their place and power to advance their own or the interest of some personal or political friend. Influenced by these and other considerations, the practice of requiring advertisement and public competitive bidding in the purchase of articles used in public institutions has been extended to practically every branch of the public service, and it would be a positive injury to the public service if so valuable a statute or rule as the one in question could be set aside or ignored at the pleasure of a public body. The public interest demands, aside from any private considerations, that we should hold that this by-law was mandatory in its nature, and substantial compliance with it indispensible to the validity of any contract coming within its reach. As the contract in question was attempted to be made by the board in direct violation of this by-law, and the appellant company was charged with notice of its existence, it had no contract with the board that it could enforce.

In view of the fact that the judgment of the lower court dismissing the petition of the appellant must be affirmed for the reasons stated, it is scarcely necessary that we should extend the opinion discussing the right to obtain the relief sought by mandamus. But, in view of the fact that counsel for appellant insists that mandamus is an appropriate remedy in cases like this, we deem it proper for the purpose of again definitely settling the question of practice to consider the question. Section 477 of the Civil Code provides that:

"The writ of mandamus, as treated of in this chapter, is an order of court of competent and original jurisdiction, commanding an executive or ministerial officer to

perform an act, or omit to do an act, the performance or omission of which is enjoined by law; and is granted on the motion of the party aggrieved, or of the Commonwealth when the public interest is affected.''

The Code provision confines the exercise of this remedy to cases in which an executive or ministerial officer declines or omits to perform an act, the performance or omission of which is enjoined by law. It is a special remedy, although perhaps not an extraordinary one, provided for the purpose of furnishing a speedy method of obtaining relief against an officer who fails or refuses to perform some duty imposed upon him by law. It was not contemplated that in cases of this character disputed issues of fact should be settled, but that the rights of the parties should be determined by such issues of law as might be presented by the pleadings, or an agreed state of facts, or a state of facts about which there could be little dispute. As said in Lowe v. Phelps, 14 Bush, 642:

''It must, therefore, appear upon every application for a mandamus that it is the legal duty of the respondent to do that which it is sought to compel him to do, and that he has upon proper application refused to perform that duty.'' To the same effect is Shine v. Kentucky Cent. R. Co., 85 Ky., 177; Norman v. Board of Managers, 93 Ky., 537; Dickens v. Cave Hill Cemetery Co., 93 Ky., 385; Cassidy v. Young, 92 Ky., 227; McDonald v. Jenkins, 93 Ky., 249.

It was not intended to aid a plaintiff in the enforcement of a mere contract right, or to take the place of the other remedies provided by law for the adjudication of disputed claims. Looking at the case from the standpoint of appellant, it involves nothing more than an ordinary breach of contract. If, as contended, the appellant had a valid contract with the School Board, it also had had an adequate remedy at law to recover damages for its breach; and to permit the writ of mandamus to be used for the purpose of enforcing a mere contract right would be a wide departure from the settled practice in respect to the character of cases in which relief by mandamus may be obtained.

We do not think that the cases of Rodman v. Justice of Larue County, 3 Bush, 145; Elliott County v. Kitchen, 14 Bush, 289, or Anderson County v. Stone, 18 B. Mon., 847, support the contention of counsel for the appellant that a proceeding by mandamus is the proper remedy in

cases like this. In the Anderson County case, Stone & Sons having built a bridge under a contract with the Anderson County Fiscal Court, sought by mandamus to compel the court to lay a levy to raise a sum sufficient to pay the balance of the contract price. The county court resisted the attempt to recover the contract price upon the ground that the bridge had not been completed according to contract, and consequently the contractors were not entitled to recover the contract price. In disposing of the case, the court although it said in substance that the writ of mandamus might go to compel the county court to lay a levy to raise money to pay a debt that it had legally contracted, did not decide that the remedy might be resorted to for the purpose of collecting an ordinary debt due on a contract. Of course, the appropriate procedure to compel the county court to levy a tax is by a mandamus, and this is all that the court really decided in that case. In the Rodman case, mandamus was also sought to require the justices of the county of Larue County to levy a tax to pay a medical bill. In holding that mandamus was the proper remedy, the court said:

"The indebtedness being thus acknowledged, and the resulting duty to make a levy to pay it being, as hitherto adjudged by this court, merely ministerial, we have no doubt of the jurisdiction of the circuit court to compel the levy by mandamus. * * * The circuit court ought, therefore, to have overruled the demurrer and issued a mandamus, unless the appellees had by answer controverted the material allegations and shown cause sufficient for withholding the writ, which is the appropriate and only adequate remedy in such a case."

The Elliott County case was an effort by a bondholder to compel the county court to appoint a collector to collect a levy made for the purpose of paying off the bonds; and the court said:

"Appellee's appropriate remedy is against the county court of claims, by mandamus, to compel the court to levy and collect a tax, and pay the bonds as provided in the act authorizing their issue."

We have not been referred to any case decided by this court in conflict with the rule we have announced. If a valid contract had been made between the appellant company and the School Board, and the School Board in pursuance of the contract had accepted the pianos and

nothing remained to be done except to pay for them mandamus would have been an appropriate remedy to compel the board to appropriate the money to pay for the pianos it had purchased.

Wherefore, the judgment of the lower court is affirmed.