BUFORD POTTS, Plaintiff in Error, v. C. B. LEIGH, Administrator, Defendant in Error.

Middle Section.   August 1, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

Cate & Cate, of Nashville, for plaintiff in error.

Albert Williams, S. L. Felts and Reese L. Macey, all of Nashville, for defendant in error.

DeWITT, J.   On October 21, 1929, Mrs. Ruth Leigh Farrell, a young woman, was struck and fatally injured by an automobile

owned and driven by Buford Potts while he was engaged in delivering messages as an employee of the Western Union Telegraph Company. Her father qualified as administrator of her estate and brought this action for damages against Buford Potts and the Western Union Telegraph Company. The Company paid the administrator $3750 and the action was voluntarily dismissed as to it under an agreement which is a subject of controversy. The cause went to trial to a jury before the Circuit Judge as to the liability of Buford Potts, resulting in a verdict and judgment for $10,000 in favor of the administrator against Buford Potts.

The first two assignments of error relate to the settlement by the Telegraph Company and a plea of accord and satisfaction based thereon. This action was instituted on November 30, 1929. On May 6, 1930 the Western Union Telegraph Company entered into an agreement in writing which, on the face of it, is a covenant not to sue said Company, in consideration of the payment of $3750, the receipt of which was acknowledged. The insistence is made that the agreement really amounted to a release of both defendants, and that the defendant Potts should have been permitted to introduce oral testimony tending to support this contention as raised under his plea of accord and satisfaction which was filed on November 3, 1930. On May 9, 1930, pursuant to the agreement, the plaintiff administrator was permitted to withdraw his action against the Telegraph Company; and was also permitted to withdraw his declaration against said Company and to refile his declaration against Buford Potts as sole defendant.

On November 3, 1930, on motion of the plaintiff, the court struck from the files the plea of accord and satisfaction. This plea was not preserved in the bill of exceptions; therefore we cannot consider the assignment based upon this plea. The rule is that where a plea has been stricken and not preserved in the bill of exceptions, it ceases to be a part of the record. McMinn County v. Ingleside Farms, 10 Tenn. App., 93; Jenkins v. Southern Lumber Co., 3 Tenn. App., 608; Sams v. State, 133 Tenn., 188. 180 S. W., 173; Hoop Co. v. Templeton, 151 Tenn., 375, 270 S. W., 73.

It appears that this plea of accord and satisfaction was not filed until after all the evidence for both parties had been presented. Upon his cross-examination the plaintiff administrator was asked if he made a settlement with the Western Union Telegraph Company. His counsel interrupted and stated that he made a covenant not to sue and tendered a copy of it. The copy was filed as a part of his testimony. Objection was made by counsel for plaintiff to this testimony. This objection was sustained but counsel for defendant stated that when he examined the copy of the agreement he would probably want to

file a plea of accord and satisfaction. It is insisted that the court erred in excluding the testimony as to the nature of the agreement made with the Telegraph Company. We understand the rule to be, as applied in the aforesaid cases, that where the stricken plea is not a part of the record, an assignment based on said plea will not be considered by the appellate court. Now in order to make the defense of accord and satisfaction it was necessary to file a special plea, and as that plea is not a part of the record this court is unable to consider this question at all. However, we will say that the defendant made no further effort to cross examine the plaintiff about the covenant not to sue, nor did he offer any testimony of other witnesses with respect to it. The assignment of error is to .the effect that the court should not have refused to permit the defendant to show that the alleged covenant not to sue entered into by the administrator with the Western Union Telegraph Company was in fact a complete settlement and release of all claims against said Company, which would inure to the benefit of Buford Potts, a joint tortfeasor. This is hardly a sufficient compliance with the rule that an assignment of error based on exclusion of evidence must quote the full substance of such evidence with a citation to the pages of the record where the evidence and the ruling may be found. See Rule 11 (3) of the Court of Appeals.

It appears that when the question was asked the plaintiff as to his making a settlement with the Telegraph Company he was interrupted and no answer was given to the question. The jury had been excused from the court room in order that this and perhaps other questions might be asked. The rule is that where the bill of exceptions does not contain the answer of the witness the appellate court of course cannot know what answer would have been made and cannot consider any assignment based thereon. L. & N. Railroad Co. v. Frakes & Payne, 11 Tenn. App., 633-4, 641-2, and cases cited. It is true that parol evidence is admissible to show that an instrument which was in form a covenant not to sue a joint tortfeasor was in fact a release. Interurban Railway v. Gregory, 137 Tenn., 432, 193 S. W., 1053. But for the reasons given we are unable to consider the assignments raising these questions and they are overruled.

The third assignment is that the court erred in refusing to grant defendant's motion for mistrial, which was based upon the testimony of the plaintiff's witness J. G. Redelsheimer to the effect that the defendant following the accident, "called his insurance company," the said testimony being given in the .presence and hearing of the jury.

It is not claimed that this reference to the Insurance Company was not by way of voluntary statement on the part of the witness. It was not purposely injected into the case by the plaintiff or his

attorneys. In fact, it is clear that they did not anticipate that the witness would make such reference. The testimony was as follows:

"Q. Did you see Mr. Potts, the defendant, at the scene of the accident? A. I did.

"Q. Where did you see him? A. He was standing by the car to the best of my recollection at the time, and the boy seemed to be worried, a young kid and I wanted to give him assistance, if I possibly could, and I told him he had better notify some one of the accident, and he asked me if somebody would call the Company and have them come and get those messages and deliver them.

"Q. That is the Western Union? A. Yes, sir, and he also called his insurance company.

"Q. We did not want to know about that, did you go from the scene of the accident until the—"

Here the witness was interrupted by counsel for defendant who requested that the jury retire; and when the jury had retired the counsel interposed a motion for a mistrial, which was overruled.

This question of error in allowing evidence that defendant had liability insurance to be brought before the jury arises frequently in such actions, and calls for treatment according to the circumstances of each case. Certainly where the plaintiff or his counsel deliberately seek to introduce such evidence or persist in it, and it is brought before the jury, the error is reversible. Manufacturing Co. v. Woodall, 115 Tenn., 605, 90 S. W., 623; Brick Co. v. Dotson, 8 Hig., 218; Cleveland v. Hunter, decided by this court January 17, 1931. The rule excluding such evidence so offered has been rigidly applied in Tennessee as well as in nearly all the other States. See note to Jessup v. Davis, 115 Neb., 1, 211 N. W., 190, 56 A. L. R., 1418. But where a reference to liability insurance was voluntarily made by a witness in ignorance of the error it has not been regarded as sufficiently serious to warrant a reversal. In Harbin v. Elam, 1 Tenn. App., 496, a witness on cross-examination by an attorney for the plaintiff was asked whether the defendant told him where the accident occurred, and he answered, "No, sir, the insurance man who went with me." The attorney had no intention of having the witness refer to insurance. While the jury was discussing the case one or more jurors said that if judgment was given against the defendant he would not have it to pay; that the insurance company would pay it. Another juror probably referred to the fact that the witness stated that an insurance man showed him where the accident occurred, and another juror stated he had carried liability insurance when he drove a car, and that the defendant probably had insurance.

No juror knew or undertook to state whether defendant did or did not carry liability insurance. Upon the motion for new trial two jurors stated on examination that if they had not supposed that defendant had liability insurance they would not have voted for a judgment against him; that it was their intention to make the insurance company pay the judgment. No witness testified that defendant carried liability insurance. And this is true in the case before us. The witness Redelsheimer simply stated that the defendant Potts called his insurance company. In Harbin v. Elam the reference of the witness to the insurance man and the conversations among the jurors, were held not to be reversible errors, especially since the defendant, when the witness made the reference, did not object to it, but waited until all the evidence was in and the case argued, then sought to have the Trial Judge enter a mistrial.

In Regina Cohen v. H. C. Richards, decided by this court on May 1, 1931, it was held that a voluntary and unsolicited statement of a witness that a representative of an insurance company came to the place of the accident was not ground for reversing the judgment of the Circuit Court.

On the basis of this testimony we are constrained to hold that the statement of the witness Redelsheimer that the defendant called his insurance company was not reversible error and the assignment based thereon is overruled.

There is no assignment that there is no evidence to support the verdict. The finding that the death of the young lady was the proximate result of the negligence of the plaintiff in error is unchallenged. The remaining assignments are—First, that the verdict is excessive; and second, that it is so excessive as to indicate passion, caprice and prejudice on the part of the jury.

As to indication of passion, caprice and prejudice from this verdict, we are confronted with facts and contentions that are unusual. The contention made is that the sum awarded is grossly excessive because the deceased young woman and her surviving husband had been separated and completely estranged for eight years.

Before, however, proceeding further, we will say that the provisions of the Workmen's Compensation law for benefits to those dependent upon employees meeting death while engaged in industry have no application to a common law action and do not furnish any standard for measurement of damages in such action for death by wrongful act. The contention made for application of such standard is overruled.

The deceased was thirty-four years of age, in good health, earning an average weekly wage of from eight to ten dollars. She was

self-supporting and did not contribute to the support of any one else.

Upon the measure of damages the instructions given to the jury were as follows:

"If you find for the plaintiff, that is the administrator in this case, you will go further and assess the damages, and at such amount as will reasonably compensate for the pecuniary value of the life of the deceased, to be determined upon the consideration of the deceased's expectancy of life; her age, the condition of her health at the time, her strength, her capacity for labor and for earning money, all modified by the fact that the expectancy of life is at most a probability, based upon experience, and also by the fact that earnings of the same individual are not always the same and uniform."

It appears without dispute that some years prior to her death the young woman had been married, but that for eight years she had been separated and living apart from her husband, but not divorced; that after her death her father and her husband entered into a written contract for a division between them of any recovery that might be obtained in this cause. The Trial Judge excluded any further evidence upon this subject, including the written agreement, on the ground that it did not affect the measure of damages. No error is assigned to this ruling. But it is contended that as the surviving husband was entitled to the recovery the judgment is excessive under the circumstances. The jury reached their verdict under instructions which contained no reference to the estangement and separation as an element for their consideration. No request for instructions upon this subject was submitted to the court, but the aforesaid facts were brought before the jury.

Under Shannon's Code, section 4029a1 (Ch. 86, sec. 1, Acts of 1897), if there are no children or descendants of children, the surviving husband alone, to the exclusion of the wife's next of kin, is entitled to all the damages recoverable for a wrongful injury causing her death, although the action must be maintained by an administrator. The damages recoverable are of two classes: First, damages for injuries to the deceased, which include damages for the mental and physical suffering; loss of time—between the injury and death, and necessary expenses resulting to the deceased from the personal injuries; second, the pecuniary value of the life of the deceased. Davidson-Benedict Co. v. Severson, 109 Tenn., 572, 72 S. W., 967. These rules are contained in Shannon's Code, section 4029 (Chapter 186, Acts of 1883), which is as follows:

"Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as pro-

vided for by sections 4025 to 4027, inclusive, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.''

In Railway & Light Co. v. Davis, 3 Higgins, 522, an action by a surviving husband, our cases upon the measure of damages for wrongful killing of married women are reviewed—also the case of Davidson-Benedict Co. v. Severson, supra. A judgment for $10,000 was affirmed upon the pecuniary value to the husband of the life of a wife whose expectancy was from twenty-five to thirty years, whose services in their home were such that she voluntarily took on herself the duties of housekeeper, cook, seamstress, etc., rendering services which were vastly more valuable than the services of mere employed or hired help could have been—not only saving the husband the expenses of paying wages to a housekeeper and a cook and a seamstress, but saving the expenses of having in the family such servants. These services were considered as the basis of valuation of the life of the deceased to her husband, and not any element of damages that could be classed as mere solatium. Railroad v. Bentz, 108 Tenn., 670, 69 S. W., 617.

The deceased, Mrs. Ruth Leigh Farrell, suffered a profound shock and was immediately rendered unconscious by the collision with the automobile. She had a compound fracture of the skull; also a laceration of the head, exposing the bone. Part of the bone of the skull was torn away. She had a large bruise over her left eye and a fracture of the clavicle. All treatment to get her out of the shock was in vain. She lived in this condition, growing constantly worse, until she died after forty-two hours. There is no evidence that she had any sense of pain or suffering. No expenses for professional or hospital services or for funeral are set forth in the declaration or shown in the evidence. This record will not support an award of damages other than those resulting from the death consequent upon the injuries received. An allowance of any sum as representing what the deceased might have recovered herself had she recovered and been disabled for life, and also of the pecuniary value of her life would be a duplication of damages, for which there is no warrant. Davidson-Benedict Co. v. Severson, supra.

The right of recovery for death by wrongful act is statutory (Shann. Code, sections 4025-4029a3) ; but although in the Davis case and in Railway Co. v. Vanhoy, 143 Tenn., 312, 226 S. W., 225, emphasis was placed upon the services of the deceased married women as house-

keepers, cooks, seamstresses, etc., in determining the pecuniary value of their lives, this does not seem to be the final test. In Hines v. Partridge, 144 Tenn., 219, 231 S. W., 16, 20 A. L. R., 1224, a judgment for $10,000 in behalf of the husband of a woman thirty-four years of age and in good health, for her death by wrongful act, while she was riding in an automobile with her husband, was affirmed as not excessive and as not the result of sentiment. In the opinion it is indicated that she was instantly killed. The court held that the plaintiff could only recover the pecuniary value of the life of the deceased. In the leading case of Davidson-Benedict Co. v. Severson, supra, it is stated that in the second class of damages allowed by the statute is embraced the ''pecuniary value of the life of the deceased,'' followed by a statement of the elements for determination of such pecuniary value. Upon an exhaustive analysis of the decisions, it is shown that there is but one cause of action embracing the first and second classes of damages contemplated in section 4029; that this is the action of the deceased, although the recovery may include as an element such damages as were sustained by the persons to whom the statute gives the recovery. The court said that by a line of decisions fully settled, recovery may be had of ''an amount of damages which fully compensates (as fully as it is possible to introduce certainty into such an inquiry) the injury done to the deceased in his own peculiar and personal relations, and, in addition, for a sum that will compensate (as far as such a matter can be rendered certain) the widow and children or next of kin for the pecuniary loss they have sustained by the death of the deceased; and at the same time the wrongdoer is made to respond in damages for the whole injury done, so far as money can compensate such an injury.'' The court further said, very significantly upon this question:

''Another effect of the principle under which the rule is formulated is that the right of recovery is fitted into our general system of law, and we are enabled to clearly understand how the recovery falls under and is to be disposed of according to our statute of distributions, as other personal estate of the deceased; the only difference being that it is not liable to the claims of creditors.

''The logical consequence of this legal status of the recovery, taken in connection with the rule for the measure of damages as formulated, is that there need be no testimony introduced for the purpose of showing that the widow, children or next of kin were dependent for support or pecuniary aid upon the deceased in his lifetime. It is sufficient, so far as this phase of the matter goes, to prove the status of widow, child or next of kin at the date of the death of the deceased from the wrongful act.''

In Heggie v. Barley, Admr., 5 Higgins, 78, it was held that a suit may be maintained by a personal representative of a deceased child for injuries resulting in its death, the recovery to be for the benefit of the father, although the father had abandoned the child and failed to provide for it, and the child's mother had obtained a divorce from him before the child was injured. The Court of Civil Appeals, through Mr. Justice Hughes, said:

> "Our statutes providing for recoveries for personal injuries negligently inflicted resulting in deaths, and designating for whose benefit such recoveries may be had are clearly in the nature of statutes providing for the descent and distribution of estates, and we are of the opinion that the courts can no more inquire into the worthiness or unworthiness of those who are designated as beneficiaries of the estates of decedents, and that the courts cannot deny relief because of unworthiness in either case unless authorized to do so by some statute."

This decision was based upon the right of inheritance in the father. The child lived for one week, and the father was entitled by inheritance to what the child would have been entitled to recover had he lived, under the first class of damages recoverable. No reference was made to the damages suffered by the father from the death of the child—as the loss of prospective services. The fact that the father had then abandoned the child and his wife had obtained a divorce from him would not prevent him from claiming the services of the child in the future. For all this a judgment for $3500 was left undisturbed.

Driver v. Arn, 6 Higgins, 582, was an action by an administrator of a childless husband killed by an automobile. There was a verdict for the defendants and the suit was dismissed. This judgment was reversed and a new trial ordered for error of the court in allowing an uncertified copy of a divorce bill previously filed by the widow to be produced and read to the jury. The Court of Civil Appeals, through Mr. Justice Higgins, said:

> "It is true, that Mrs. Driver, the widow, was the beneficiary of the suit, her husband having no children. But this did not change the form of the action. It was still the action of the husband brought by his administrator to recover the pecuniary value of his life. Whether driver loved his wife or was mean to her were not strictly pertinent issues. Davidson v. Severson, 109 Tenn., 572; Heggie v. Barley, 5 Higgins, 79. Moreover, the wife might have relented or wrongfully charged her husband."

The theory of our cases seems to be that no new or independent right of action arises from death by wrongful act; that the pecuniary value of the life is its value to the estate of the deceased; that the

amount of money representing this value represents also the loss which the beneficiary has suffered, because he is entitled, under the statute of distribution, to the money as the substitute for the life of the deceased; in other words, that the value of the life of the deceased represents the "damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received."

Under this rule it is immaterial that the deceased and her husband had been estranged. It does not affect the pecuniary value of her life. The verdict for $10,000 is not so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to raise a presumption that it is founded on prejudice, passion or caprice. There is no assignment that there is no evidence to support the verdict, and the negligence of the plaintiff in error Buford Potts as the proximate cause of the injuries and death of the young lady is thus unchallenged. She was a young woman, thirty-four years of age, in good health, earning an average weekly wage of from $8 to $10. The fact that she was self-supporting and no one contributed to her support, or that she did not contribute to the support of any one else will have no bearing upon this question. It is true that for about eight years she and her husband had been separated and living apart and he made no contribution to her support; that after her death he came to the home of his wife's father and entered into an agreement with him whereby for the sum of $500 he waived his right to administer upon the estate of his deceased wife and requested the County Court to appoint her father as her administrator; and he also covenanted in writing that he would assign and transfer to her father all of his rights and interest in whatever might be recovered by suit or compromise settlement for the death of his wife. These matters and the receipt of $3750 under the covenant not to sue have no bearing upon the question of the amount recoverable. This is the action of the administrator to recover the pecuniary value of the life of the deceased. The sum received, under a covenant not to sue, from one joint tortfeasor does not reduce the amount recoverable against the other. The consideration for the covenant not to sue is not a satisfaction of the claim for damages and the other tortfeasor would have no cross-action against the one to whom the covenant was given. Nashville Interurban Railway Co. v. Gregory, 137 Tenn., 422, 193 S. W., 1053.

Upon this subject of excessiveness our consideration is confined to the judgment for $10,000. The deceased had an expectancy of more than thirty-one years. The law furnishes no standard by which to measure the compensation to which a successful plaintiff is entitled in a personal injury case, but confides the amount of damages to be

awarded to the judgment of impartial jurors, guided by the facts and circumstances of the particular case. The verdict has received the approval of the Trial Judge, having been subjected to his scrutiny. We are unwilling to disturb it.

It results that the judgment of the Circuit Court is affirmed. A judgment will be entered in this court in favor of the defendant in error against the plaintiff in error for the sum of $10,000, with interest from the date of the judgment in the Circuit Court, and all costs of this cause. The costs of the appeal will also be adjudged against the defendant and the surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.