## HALL *v.* NASH.

### (*Nashville,* December Term, 1946.)

Opinion filed January 11, 1947.

Lowell W. Taylor, of Memphis, for plaintiff in error.

Canada, Russell & Turner, of Memphis, for defendant in error.

Mr. Justice Prewitt delivered the opinion of the Court.

The plaintiff below, Mrs. Kate Nash, sued the defendant, D. C. Hall, d/b/a D. C. Hall Motor Transportation, for the wrongful death of her husband, Charles N. Nash, 76 years of age, who was instantly killed when the bicycle on which he was riding collided with the defendant's truck at or near the northwest intersection of South Main Street and Calhoun Avenue in the city of Memphis about 10 o'clock on the morning of December 1, 1943. There was a recovery in favor of the plaintiff in the sum of $6,000. This judgment was affirmed by the Court of Appeals. *Certiorari* has heretofore been granted by the Court and argument heard. The principal question presented is whether the trial judge should have sustained the defendant's motion for a directed verdict. The defendant offered no proof, and hence the facts are undisputed.

The unfortunate tragedy occurred at or near the northwest intersection of South Main Street and Calhoun Avenue. South Main Street runs north and south and is 57 feet wide from curb to curb, and Calhoun Avenue runs east and west and is 47 feet wide from curb to curb. There is a double line of streetcar tracks along the middle part of Main Street and branches therefrom running east on Calhoun Avenue. There are safety zones marked by mushroom buttons on the east and west side of Main Street just north of Calhoun and traffic lanes between the mushroom buttons on the east side of the street. There is a traffic light suspended above the center of the intersection of the two streets. The corners of the intersection are slightly rounded off, and just inside the curb in the sidewalk on each side of South Main Street and just about on the north property line of Calhoun Avenue there are tall steel posts from the top of which heavy wires are stretched across Main Street to support the overhanging trolley wires; and immediately north of the post on the west side of the street and next to the curb there is a large mailbox standing on the sidewalk. On the northwest corner of the intersection fronting on Main Street is the Pantaze Drugstore, and on the southwest corner is the Grand Central Station, and on each of the other corners there is a restaurant.

Mr. Nash had lived in Memphis for more than fifty years and was employed as a city salesman for a printing company. He had ridden a bicycle for more than 50 years and was accustomed to riding it daily in calling upon his customers throughout the city. On the morning of the collision he had ridden his wheel south along the west side of South Main Street to a point in front of the Pantaze Drugstore on the northwest corner of the intersection of South Main Street and Calhoun Avenue and

had stopped there, going south, for a traffic light. He did not dismount but remained astride his wheel with his foot on the curb. Just behind him a large truck belonging to the defendant came into the traffic lane next to the curb and reached the intersection just as the light changed from red to green and, without stopping, made a right turn to go west on Calhoun Avenue.

William Perkins, the driver, called as a witness by the plaintiff, testified that he gave the proper signal for a right-hand turn by holding out his left arm with the hand pointing up, and that his helper, who sat on his right, held out his right arm and hand horizontally; that he was driving about three or four miles per hour and before making the right-hand turn he veered slightly to the left and then turned sharply to the right; that he had to swing a little to the left before making the turn to the right in order to keep the back end from hitting the curb. The truck consisted of a large covered body or trailer carrying a load of 7,000 or 8,000 pounds of automobile batteries, drawn by a tractor, and having an over-all length of 41 or 42 feet.

Perkins further testified that as he came into the west traffic lane he saw Mr. Nash astride his wheel standing next to the curb, with his foot on the curb, and he last saw him through the window of the cab on his right as he passed him and began to veer to the left. After that he says his view of Mr. Nash was obstructed by the body of the truck. The truck had rear-vision mirrors on both sides so he could see vehicles following him, but the right-hand mirror was so focused that he could not see Mr. Nash after he passed him because the mirror sets up too high, and while he was making the turn to the right he could not see anything in the mirror but the body of the truck; that after he had made the turn to the right and the front

end of the truck had proceeded some 35 or 40 feet into Calhoun Avenue, some one called to him and he brought his truck to a stop within 3 or 4 feet, and upon alighting he saw that the right rear wheels of the truck had run over Mr. Nash; that the cab was headed about west when he came to a stop, but that the tail end of the trailer had not straightened out and it was near the corner.

It seems that no witness saw Mr. Nash start off on his bicycle from his parked position at the curb, and no one noticed him traveling the several feet to the point of collision.

██ The question presented is whether there is any material evidence to show that the driver of the truck was guilty of any negligence which proximately caused the injury. Calhoun Avenue is 47 feet wide and the truck was 41 or 42 feet long. The testimony shows that the deceased was 6 or 8 feet north of the corner. The driver testified that as he went into Calhoun Avenue he turned slightly to the east; that he had to do this in order to keep the back end from hitting the west curb; and that after the front end of his truck got past middleway of the street he made the sharp turn to the right. No doubt both lower courts came to the conclusion that the driver of the truck was guilty of some negligence in pulling the rear end of the truck too close to the curb, which caused the deceased to be pinned between the curb and the truck, producing injuries from which he died.

"There can be no constitutional exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried, but the case must go to the jury." *Hines* v. *Partridge,* 144 Tenn. 219, 232, 231 S. W. 16, 19.

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery." *Carey Roofing & Mfg. Co.* v. *Black,* 129 Tenn. 30, 36, 37, 164 S. W. 1183, 1185, 51 L. R. A. (N. S.), 340.

". . . When a given state of facts is such as reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court." *Knoxville Traction Co.* v. *Brown,* 115 Tenn. 323, 329, 330, 89 S. W. 319, 321.

Both lower courts found evidence of negligence, and we find a basis for this conclusion.

It is insisted that there is no evidence that deceased suffered any pain after the accident. The proof warrants the inference that Mr. Nash lived a few minutes after the accident. It was the province of the jury to determine this question.

 The Court of Appeals set aside the *remittitur* of $1,000 and affirmed the judgment. We see no error in this and decline to disturb the judgment.

We have carefully considered all the assignments of error and they are overruled.

Affirmed.