LOUISVILLE & N. R. CO.

v.

TUCKER et al.

No. 11840.

United States Court of Appeals
Sixth Circuit.

March 8, 1954.

See my dissent from the same majority in N. L. R. B. v. Southeastern Pipe Line Co., 5 Cir., 210 F.2d 643.

John B. Mack and Clarence Clifton, Memphis, Tenn., Clifton & Mack, Memphis, Tenn., of counsel, for appellant.

Hugh F. Carey, Jr., Memphis, Tenn., Harsh, Pierce, Cochran, Rickey & Carey, Memphis, Tenn., of counsel, for appellees.

Before SIMONS, Chief Judge and McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellees, who are the children and husband of the deceased, Elizabeth Tucker, recovered a judgment in the district court against the appellant, Louisville & Nashville Railroad Company, in the amount of $38,000 for damages on account of the death of Mrs. Tucker resulting from a railroad crossing accident. Appellant complains of erroneous rulings on questions of evidence, erroneous instructions by the trial judge, and the trial judge's action in overruling motions for a directed verdict in its favor.

The accident occurred on July 2, 1951, at about 11:20 p. m. on the Illinois Central Railroad Company's right-of-way where it was crossed by Milton Avenue in Memphis, Tennessee. A train operated by the appellant was proceeding northwardly. An automobile, owned and operated by Mrs. Charlotte Sawyer, was proceeding westwardly on Milton Avenue, which is about 20 feet wide and runs in an eastwardly and westwardly direction crossing the railroad right-of-way. The decedent, Mrs. Tucker, was a passenger in the car and was seated on the front seat next to Mrs. Sawyer. Another passenger, Mrs. Muth, was also on the front seat next to Mrs. Tucker. The three ladies had customarily played bridge at night weekly since February 1951, and on each occasion, following the bridge game, Mrs. Sawyer drove Mrs. Muth and Mrs. Tucker to their respective homes over the same route taken on the night of the accident. On the night in question, following the bridge game, the usual procedure was followed. In going over the Milton Avenue crossing Mrs. Sawyer's car was struck by the appellant's train, causing the death of both Mrs. Tucker and Mrs. Muth and causing serious injuries to Mrs. Sawyer.

The complaint filed by the appellees was directed against the Illinois Central Railroad Company in Counts I and II, against the appellant in Counts III and IV, and against Mrs. Sawyer in Counts V and VI. Before the trial, appellees dismissed their claim against Mrs. Sawyer. At the close of appellees' evidence, the Court dismissed the action against the Illinois Central Railroad Company, from which ruling no appeal has been

taken. Count III directed against the appellant alleged common law negligence in the operation of the train. Count IV alleged violation of Section 2628(4) of the Tennessee Code, referred to as the "Look Out" Statute, and violations of Memphis ordinances limiting train speed in the City to 20 miles per hour and requiring the crossing to be flagged. Appellant denied the allegations of common law negligence; denied that the "Look Out" Statute was applicable under the conditions of the accident; claimed that if the statute was applicable it had fully complied with its requirements; denied violation of the Memphis ordinances; and alleged contributory negligence on the part of the decedent.

At the trial Mrs. Sawyer testified that she remembered approaching the crossing, that she travelled toward it at between 20 and 30 miles per hour, and that she took her foot off the gas and slacked her speed. She stated that she saw a blinding light from a car coming in the opposite direction as she was approaching the crossing. She did not remember if she stopped the automobile after she saw the blinding light, but testified that she was hit immediately thereafter. The brakes and lights of her car were in good condition and the car was under control. She remembered no conversation going on between the persons in the car and did not remember that Mrs. Tucker or Mrs. Muth ever called a warning to her or remonstrated about the way she was driving. There was a slightly misting rain and the windshield wipers were working on both sides of the windshield. The side windows were "cracked," but not rolled down. She was very familiar with the crossing. As she approached the crossing she saw no warning light, heard no bell or whistle, and saw nothing to make her believe there was a train approaching.

Mrs. Dupree testified that she was driving eastwardly on Milton Avenue but turned left into a driveway immediately before reaching the crossing. She saw a big light on the front of the engine but did not remember hearing a bell or whistle. The signal light was not working, and there was no flagman with a lantern. Immediately prior to the accident, as she turned into the driveway on the left, a car passed her on the right at a terrific rate of speed travelling east toward Mrs. Sawyer and passed over the crossing so closely in front of the engine that she thought it would be hit. She did not see Mrs. Sawyer's car. She testified that after the impact the train "was going better than twenty to twenty-five miles an hour, a fast rate."

Another witness testified that after the accident the automobile was 280 feet from the crossing, and that running at a rate of 15 miles per hour the train could have stopped in 40 feet.

The engineer, who was on the west side of the engine, saw no such car cross in front of his engine. A switchman on the engine looking down the tracks stated that no car going eastwardly crossed in front of the engine at Milton Avenue. The fireman on the east side of the engine stated that no eastbound automobile passed over the crossing.

Lavina Wilson, a witness for the appellant, lived on the northeast corner of the crossing and was looking out of a south window on to the crossing at the time of the accident. She saw the engine with its light burning approaching the crossing and heard its whistle. She also heard bells ringing at the crossing which had been newly installed. She saw an automobile going west on Milton Avenue which did not stop as it entered onto the track. She stated "but it did not stop. And the next thing I heard was a big noise and I knowed it had hit it. * * *" And "the train and the automobile got to the crossing about the same time."

The testimony of the train crew was that a switch engine and the six cars were moving north, the engine being in a backward position pulling the cut of cars. Its headlight was shining, the bell was ringing, the whistle was blowing, and there was a lookout ahead. It was travelling about 15 miles per hour as it approached the Milton Avenue crossing.

Mrs. Sawyer's car was seen for the first time as it came past a store on Milton Avenue which was about 50 feet from the crossing, at which time the engine was about 20 feet south of the middle part of Milton Avenue. The automobile was travelling about from 40 to 45 miles per hour. Just as soon as the fireman saw the car he yelled at once to the engineer who immediately put on all the brakes. He stated that when he first saw the car he realized then that at the rate of speed it was coming it was not going to stop, and that there was going to be an impact. He also testified that the automobile was never on the track until the engine hit it, the collision occurring about the middle of the crossing, but admitted on cross-examination that the engine went from a point about 20 feet south of the middle of Milton Avenue to approximately the point of impact before the emergency brake was applied.

The trial judge overruled appellant's motion for a directed verdict at the close of appellees' proof and also at the close of all the proof. The case was submitted to the jury following the Court's instructions and the jury returned a verdict for $38,000.

The Tennessee "Look Out" Statute, Section 2628(4), Tennessee Code, provides as follows:

> "Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

The question of liability under the statute was submitted to the jury. The appellant contends that the Court erred in so doing, because the Statute was not applicable in that the uncontradicted evidence showed that the automobile was not an "obstruction" on the track and that it appeared so suddenly it was impossible to comply with the section, and, in any event, the statutory precautions were observed. Gaines v. Tennessee Central R. Co., 175 Tenn. 389, 135 S.W. 2d 441.

There are many Tennessee cases construing and applying this statute, from which the following principles appear well settled. The provisions of the statute are imperative and mandatory and require absolute obedience, and it is no defense on the part of the railroad that the accident would have occurred even if the statutory precautions had been observed. Chattanooga Rapid Transit Co. v. Walton, 105 Tenn. 415, 420, 58 S.W. 737; Alabama Great Southern Ry. Co. v. Brookshire, 6 Cir., 166 F.2d 278. "The duties of those in charge of a train to observe the requirements of the statute are not confined to the very time the accident occurs. They commence when the obstruction 'appears' upon the road and 'the road', in contemplation of the statute, is not merely what is called strictly the roadbed or track, but also includes the public approaches thereto and it is the duty of the lookout to view the whole road within the orbit of his vision. Nashville & Chattanooga R. Co. v. Anthony, 69 Tenn. 516, 520." Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621, 624–625; Union Traction Co. v. Todd, 16 Tenn.App. 200, 64 S.W. 2d 26. If the automobile appears as an obstruction on the track too late to permit those on the engine to blow the whistle, apply the brakes or otherwise try to avert the collision, as where the events are practically simultaneous, the statute is not applicable. Impossibilities are not required and the railroad will not be liable if all was done that should have been done. However, when the impossibility and unavoidableness arises out of the default of the railroad company, the railroad company will still be liable. Gaines v. Tennessee Central R. Co., supra; Chattanooga Rapid Transit Co. v. Walton, supra. For example "if the train approached a much used public crossing (whereon the presence of persons and vehicles might reasonably be anticipated), at a rate of speed which the engineer knew would render it impossible

to comply with the requirements of the statute if an obstruction appeared on the crossing, the non-observance of the statutory precautions would not be excused." Louisville & N. R. Co. v. Frakes & Payne, 11 Tenn.App. 593, 617–618.

The evidence in this case does not show without contradiction or reasonable inference to the contrary, that the automobile was first seen by the train crew, or should have been seen by it in keeping a proper lookout ahead, simultaneously with the impact. If it was not seen at some distance from the track because of a failure on the part of the lookout to view the whole road, including the public approaches thereto, "within the orbit of his vision", the impossibility of complying with the statute arose out of default of the railroad company and would not operate as an excuse for not complying with the statute. Chattanooga Rapid Transit Co. v. Walton, supra. Whether it was seen, or should have been seen, in sufficient time before the impact to enable the crew to recognize it as an obstruction and to comply with the requirements of the statute was a question of fact for the jury. Whether those in charge of the train did all they could have done to avoid the injury in using the appliances on the train enumerated in the Act, is ordinarily a question of fact for the jury in the light of all the evidence. Louisville & N. R. Co. v. Frakes & Payne, supra; Majestic v. Louisville & N. R. Co., supra, 6 Cir., 147 F.2d at page 626. The trial judge instructed the jury—"The word 'obstruction' as used in the statute or precaution means that which may obstruct or render the safe passage of a train, or that which may receive an injury or damage if run into or over by the train, as in the case of a person on the street or near enough to the railroad tracks to be within striking distance of a train;" that the burden of proof was upon the plaintiffs to show that Mrs. Sawyer, Mrs. Muth and Mrs. Tucker became obstructions upon the track, or were so close to it as to be struck by a passing train; that if the defendant observed the statutory precautions it was not liable on this phase of the case; that if it becomes impossible for lack of time to observe all the statutory precautions the railroad company must first observe those precautions which from their nature were most effactual from all the circumstances to prevent an accident; and that if "a person or vehicle appears upon the track as an obstruction, as that term has been defined to you, so suddenly that compliance with the precautions is impossible, there would be no obligation on the railroad company to observe the precautions." We are of the opinion that the trial judge was not in error in submitting this issue in the case to the jury under the instructions above referred to.

The accident occurred on trackage called the Belt Line owned by the Illinois Central Railroad Company, which connected with all the railroad switching yards in Memphis. At the Milton Avenue crossing, and to the north and south of the crossing, there were side tracks for industry. The Belt Line was not used by passenger trains of the appellant. The engine involved was a switch engine operated by a switching crew following yard switching rules laid down in a rule book of operations. It was not operating on any train time schedule or under the control of a train dispatcher. The engine had gone into Line "A," an interchange track between the Frisco Railroad and the L. & N. Railroad leading into the Frisco switching yards. On Line "A," outside of the Frisco yards, it picked up three empty cars which were being returned by the Frisco to the L. & N., and also three cars of stock going to Abraham Brothers Packing House and after returning to the Belt Line proceeded on its way to Leawood Yards, the switching yards of the L. & N., approximately five miles distance, about three miles of which was over the double track of the Belt Line passing through the City and intersecting city streets, one of which was Milton Avenue. After delivering the three cars of stock to the Leawood Yards, if there had been time remaining in the shift the crew would

have broken up the cut of cars and carried them to Abraham Brothers, but on this particular night there was not sufficient time to do this and delivery of the cut to the Leawood Yards would have completed the work of the crew for the night.

■ Appellants contend that at the time of the accident it was engaged in a switching operation, which type of movement is not included under the "Look Out" Statute. Chattanooga Station Co. v. Harper, 138 Tenn. 562, 577, 199 S.W. 394. However, in that case the accident occurred within the station limits at a point remote from any street of the city which crossed the track. In Louisville & N. R. Co. v. Martin, 113 Tenn. 266, 286, 87 S.W. 418, the engine was transferring cars from its north to its south station when the accident occurred on the main track outside of the switching yard. The Court held that since it was outside of the switching yard it was not the kind of a switching operation excluded from the Statute. See also, Railroad v. Dies, 98 Tenn. 655, 657, 41 S.W. 860, to the same effect. Under somewhat similar circumstances to those existing in this case, this Court has held that a train moving several miles through a city, away from its switchyards and depots, is subject to the provisions of the Statute, even though it be transporting cars in making up trains or placing cars at industrial plants. We are of the opinion that the District Judge was correct in his ruling that the Statute was applicable.

■ The District Judge included in his charge possible liability on the part of the appellant by reason of common law negligence and also by violation of Sections 1376 and 1378 of the City ordinances. Sec. 1376 imposes a speed limit of 20 miles per hour for trains operating in the City. Sec. 1378 requires certain crossings designated by the Commissioner of public service to have human flagmen on duty. It was stipulated that the Commissioner had designated the crossing as one to be flagged. Appellant contends that Sec. 1378 was not applicable

in that it had no knowledge that the Milton Avenue crossing was so designated. The Court ruled that the ordinance was applicable regardless of actual notice. We agree with the ruling. City of Knoxville v. Hargis, 184 Tenn. 262, 271, 198 S.W.2d 555; Mayor, etc., of City of Knoxville v. King, 75 Tenn. 441, 445; Montenegro-Riehm Music Co. v. Board of Education, Louisville, 147 Ky. 720, 725, 145 S.W. 740; Southern Pacific Co. v. Humphrey, 9 Cir., 97 F.2d 29.

■ Appellant contends that Mrs. Tucker was contributorily negligent as a matter of law, which barred a recovery based on common law negligence or violation of the City ordinances. It is agreed that under Tennessee law the contributory negligence of the driver of an automobile involved in an accident is not imputed as a matter of law to a guest riding in the car. Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 496–497, 178 S.W. 1117, L.R.A.1916A, 1111. It appears to be equally well settled that a passenger, although not driving the car, must exercise due care for his own safety, and that if he sees, or ought by due diligence to see, that the driver is not taking proper precautions, it is his duty to remonstrate or give some warning of danger, and a failure to do so is negligence. Dedman v. Dedman, 155 Tenn. 241, 246, 291 S.W. 449; Louisville & N. R. R. Co. v. Anderson, 159 Tenn. 55, 15 S.W.2d 753. The jury was so instructed. Appellant relies upon the established facts as showing that Mrs. Tucker, although a passenger, was negligent in failing to exercise due care for her own safety under the foregoing rule, and that the District Judge should have so held. Where the uncontradicted facts show without question that a passenger has failed to comply with this duty, a directed verdict is required. Dedman v. Dedman, supra; Louisville & N. R. Co. v. Anderson, supra; Nashville C. & St. L. Ry. v. Barnes, 177 Tenn. 690, 152 S.W.2d 1023. But, even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether under circumstances conceded the con-

duct of a person was that of an ordinarily prudent man, the matter should be left to the jury. "It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery." Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 36–37, 164 S.W. 1183, 1185, 51 L.R.A.,N.S., 340. The extent to which a passenger should appreciate an impending peril and the opportunity to react to it depends upon the particular facts in each case. Louisville & N. R. Co. v. Tracey, 12 Tenn.App. 167; Berry on Automobiles, Section 571. According to appellees' evidence in this case, the following facts are important in determining whether Mrs. Tucker was negligent in not cautioning Mrs. Sawyer about the crossing or remonstrating with her operation of the car. Mrs. Tucker knew that Mrs. Sawyer was very familiar with the crossing. The automobile was approaching the crossing at a reasonable rate of speed, and was under control. It slacked speed upon approaching the crossing. It was misting rain. Mrs. Tucker was seated in the middle with Mrs. Sawyer between her and the approaching train. The side windows were almost closed. Mrs. Sawyer did not see the train or hear any whistle or bell. The electrical signal device was not in operation to signal the approach of the train. There was a blinding light from a car coming in the opposite direction at a terrific rate of speed on a narrow road. There is of course no testimony from the decedent about when she first realized the approach of the train and that Mrs. Sawyer was not going to stop, and whether there was time thereafter to give an effective warning. Each case must be determined on its own facts. In our opinion, the foregoing facts are not susceptible of no other reasonable inference than that Mrs. Tucker failed to do what an ordinarily prudent person would have done under similar circumstances. We think the question was properly left to the jury. Knoxville Ry. & Light Co. v. Vangilder, supra, 132 Tenn. at pages 498–499, 178 S.W. 1117.

■ Appellant complains of the action of the trial judge in permitting the jury to take into consideration, in estimating damages, the personal pain and suffering of the decedent, on the ground that the evidence failed to show any pain and suffering in the interval between the accident and her death. Under Tennessee law, any pain and suffering on the part of the decedent is a proper element of damage. Davidson Benedict Co. v. Severson, 109 Tenn. 572, 614, 72 S.W. 967. The evidence shows that Mrs. Tucker was not pronounced dead until she arrived at the hospital, and, as testified by the foreman in charge of appellant's train, immediately following the accident, while she was laying by the track, she emitted groaning sounds and appeared to be in great pain. The Court's instruction permitted the jury to consider the pain and suffering—"If you find from a preponderance of the evidence they experienced any personal pain and suffering, mental or physical, during that time." Under the facts, we are of the opinion that the instruction was not erroneous. Hall v. Nash, 184 Tenn. 312, 317, 198 S.W.2d 649.

■ Decedent's husband testified that as a result of his wife's death he was required to employ a housekeeper at considerable expense, to which testimony the appellant objected. The decedent and her husband were estranged. But the evidence showed that the decedent did all of the housework and took care of the children who lived with her, and that following her death the husband was required to employ a housekeeper to assist him in managing the household while the minor children were in school. Under the Tennessee law, the right of action for a wrongful death does not include loss of consortium. No claim was made for damages on that account. But the cause of action does include the pecuniary value of the life of the deceased. Davidson Benedict Co. v. Severson, supra; Dixie Greyhound Lines Inc.

v. Woodall, 6 Cir., 188 F.2d 535. We are of the opinion that the evidence was properly received.

Appellant also complains of not being permitted to show that the decedent and her husband were estranged and that a divorce suit was pending. In view of the fact that loss of consortium is not an element of damage and no claim was made on that account, the estrangement of the parties was immaterial and did not affect the pecuniary value of the decedent's life. Driver v. Arn, 6 Tenn.Civ. App. 582; Potts v. Leigh, 15 Tenn.App. 1.

Appellant's claim that the verdict was excessive by reason of passion and prejudice is not supported by the record. We are not referred to any evidence or facts in the record evidencing passion or prejudice other than the size of the verdict. The verdict, although large, is not in excess of what the evidence would justify. The decedent had a life expectancy of 30.91 years and was earning approximately $38.50 per week. Burial expenses were $455.27. The expense of the housekeeper varied from $90 to $200 per month, depending upon where the husband was stationed. This item over a few years until the children became old enough to take care of themselves amounted to several thousand dollars. In addition, there were the intangible values of supervision, counsel and advice on the part of the mother, differing from that received from a housekeeper, and the element of pain and suffering. Also taking into consideration the present inflated value of the dollar, the verdict does not seem to us to be in such an amount as would justify our setting it aside for that reason. Dixie Greyhound Lines v. Woodall, supra, 6 Cir.

In addition to proceeding against the appellant in this action, the appellees also made the Illinois Central Railroad and Mrs. Sawyer parties-defendant. The complaint alleged that Mrs. Sawyer was guilty of negligence in the operation of the automobile, which negligence concurred with the negligence of the other defendants and was the proximate cause of the accident. Prior to the trial the action was dismissed without prejudice as to Mrs. Sawyer. The appellant attempted to introduce in evidence the allegations of the complaint against Mrs. Sawyer, but was not permitted to do so by the Court, which ruling is also complained of. The complaint was signed by counsel for the appellees. We discussed this general question in the recent case of Fuller v. King, 6 Cir., 204 F.2d 586, where we pointed out that the prevailing rule in the federal courts appears to be that pleadings signed only by counsel and later withdrawn are not admissible as admissions by the party on whose behalf they were filed. In addition, the allegation in the present complaint that Mrs. Sawyer was negligent is not an admission by the appellees that the L. & N. was not also negligent, or that Mrs. Tucker was guilty of contributory negligence, since the negligence of Mrs. Sawyer is not imputed to Mrs. Tucker.

We have also considered the special instructions requested by appellant and refused by the District Judge, and are of the opinion that there was no error in so ruling. Their substance was covered by the instructions given. S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, 499. Requested instructions dealing with certain detailed facts may be correct if only those facts are to be considered, but often they fail to contain or properly emphasize other facts which are material to the issue and thus are not suitable for a proper presentation of the case to the jury. Schwartz v. Myrden, 1 Cir., 160 F.2d 678, 679.

The Judgment is affirmed.