## ARCHER v. ARCHER.—219 S. W. (2d) 919.

Eastern Section.  November 24, 1947.

Petition for Certiorari denied by Supreme Court, March 8, 1948.

Chas. S. Kitts, of Maynardville, and Ailor & Ailor, of Knoxville, for plaintiff in error.

C. L. Waggoner and Everett M. Smith, both of Knoxville, for defendant in error.

HALE, J. This is an alienation of affections suit which has shaken Raccoon Valley in Union County from center to circumference. It was brought by Lillie Archer, the former wife of Esker Archer, against Daisy Kiser (Archer), who, it is alleged, supplanted plaintiff in the affections of said Esker, and succeeded her as his wife some three weeks after Lillie and Esker were divorced. Upon a trial by a jury of the selection of the parties, under evidence to which there were no objections and a charge to which there were no exceptions, the plaintiff was awarded a judgment of five hundred dollars as the value of the affections so alienated, which apparently is not badly out of line in view of the matters hereinafter mentioned. This verdict was approved by the trial judge and the defendant below appeals and assigns errors.

The only assignment of error briefed and relied upon is that there was no evidence authorizing a submission of the case to the jury; that the proof showed conclusively there was no affection of Esker for his wife Lillie when the acts complained of occurred; and that the defendant below was not the pursuer, but rather the pursued. Certain other assignments were attempted to be made, but they are neither briefed nor supported by the record and will not be noticed further.

The evidence (in narrative form), when taken in the light most favorable to the verdict, Morrison v. National Life & Accident Ins. Co., 179 Tenn. 18, 162 S.

W. (2d) 497; Colsher v. Tennessee Electric Power Co., 19 Tenn. App. 166, 84 S. W. (2d) 117; City of Knoxville v. Camper, 21 Tenn. App. 210, 108 S. W. (2d) 787; Schumpert et ux. v. Moore, 24 Tenn. App. 695, 149 S. W. (2d) 471; Kurn v. Weaver, 25 Tenn. App. 556, 161 S. W. (2d) 1005, reveals that Esker and Lillie Archer were married in 1919, and remained on intermittently friendly terms for several years or, at least, until seven children were born to them. In 1935 she filed a bill for divorce, charging cruel and inhuman treatment, and adultery with one Lucy Sturgeon. They became reconciled and the divorce suit was withdrawn. Thereafter, on account of ill health, for a part of the time at least, Lillie refused to have marital relations with him and would "throw up" other women to him. This led to another separation in March, 1942, when Esker and his sixteen year old son moved to another place and "batched" there for about three months. Again their difficulties were patched up, and they resumed cohabitation, living together until the final separation in the fall of 1944.

Apparently, this parting of the ways was due to the advent into Raccoon Valley of the defendant below, Mrs. Daisy Kiser. She was a widow, fifty-one years of age, and the mother of twelve children, the youngest of whom was eight years of age. She apparently was of some little property, being the owner of one of the few automobiles in Raccoon Valley, which she used liberally for the benefit of her neighbors, especially Esker, toward whom she pursued a good-neighbor policy which was extremely distasteful and obnoxious to his wife.

As to her personality and pulchritude there is no evidence except from a statement attributed to Esker soon after the Widow Kiser came to the Valley. Esker and

Ben Shipley were working in a field near the highway when Mrs. Kiser came along in her car and called Esker to her. Then, to quote Shipley, ". . . the said Esker Archer did go down to the road where she was at. And on that occasion he said that, that Kiser woman would be plumb pretty if she had a new set of teeth." Soon afterward, when she was in Knoxville having dental work done, she accidentally ran into Esker and brought him back home.

Following this there developed a relationship which the jury found culminated in Esker's leaving home in October, 1944, and instituting a divorce suit against Lillie. She filed an answer and cross-bill, obtaining a divorce in February, 1945. It is apparent that the relations of Esker and the Widow Kiser were contributing factors to the divorce suit. They were married some three weeks after the obtention of the divorce.

This suit followed, with the result noted.

■ The record shows that Mrs. Kiser (now Archer) would go by Esker's home, honk her car horn, call him to her, and take him riding. On one trip she took him to Knoxville and left a note for him at a doctor's office. At other times he drove the car for her, once taking her to a pie supper at the Raccoon school, after which they returned to her home, being joined there by some of the artists who had "made music" at the pie supper. Evidently a good time was had by all. On other occasions she would walk along a path by his home. She performed acts of neighborly kindness by taking him and his beans to market. He, in turn, would put brake fluid in her car, as well as act as chauffeur for her, and so on. She took him to dinner once because he loved fish. At another time she fed him and his son. At still another time, after

Esker's separation from his wife, the plaintiff below, the Widow Kiser went to the house where he was staying, but said she did so to have him fix a flashlight. She would also park her car in front of his house, and Esker would, on occasion, ask her to go to the store for him. She contends these things were done innocently, but the jury found to the contrary. The evidence contained disputes as to material facts, and also as to the conclusions to be drawn from the whole evidence. We are concluded by the verdict, approved as it is by the trial judge. Hall v. Nash, 184 Tenn. 312, 198 S. W. (2d) 649.

We think the evidence adopted by the jury authorized the inference that the defendant below did by feminine wiles and guile incite and welcome the attentions of this husband. The consistent and persistent manner in which she managed to get in his company, the trips they took, his visits to her home, and their marriage within three weeks after his divorce, all lead to the conclusion that she was the pursuer, although it was done with a degree of subtlety worthy of any daughter of Eve. This brings the case within the rule announced in Wilson v. Bryant, 167 Tenn. 107, at page 113, 67 S. W. (2d) 133, 135, to wit:

"The weight of authority is that in alienation suits the plaintiff must establish that the defendant is the enticer —the active or aggressive party. If it develops that the plaintiff's spouse was merely bent on the gratification of lust, was not particular in the choice of a guilty partner, plaintiff's case is not made out. Likewise we think plaintiff's case would fail if it should appear that for any other reason the plaintiff's spouse was the pursuer rather than the pursued. Scott v. O'Brien, 129 Ky. 1, 110 S. W. 260, 16 L. R. A., N. S., 742, 130 Am. St. Rep. 419; Waldron

v. Waldron, C. C., 45 F. 315; Buchanan v. Foster, 23 App. Div. 542, 48 N. Y. S. 732; Stewart v. Hagerty, 251 Pa. 603, 96 A. 1099, Ann. Cas. 1917D, 483; 30 C. J. 1125; 13 R. C. L. 1464. Decisions to the contrary are Hart v. Knapp, 76 Conn. 135, 55 A. 1021, 100 Am. St. Rep. 989; Miller v. Pearce, 86 Vt. 322, 85 A. 620, 43 L. R. A., N. S., 332.''

It is true that Esker Archer had in the past shown himself to have a roving eye and an errant disposition. He and his wife Lillie had many trials and vicissitudes. He had affection enough for her, and she for him, to bring about reconciliations, and they were living together when the defendant below appeared on the scene and, as the jury found, began her campaign for Esker's affections. Her actions, in part, were known to the plaintiff below, and the family jars then became a vicious circle of cause and effect, leading finally to the divorce court. Esker's affections, such as they were, were transferred from his wife to Mrs. Kiser.

The fact that the jury allowed only five hundred dollars indicates a rather low opinion as to the value of the husband's affections. They were worth but little, but such as they were belonged to the wife. The judgment below is affirmed with interest and cost.

Affirmed.

Burnett and McAmis, JJ., concur.