**Hazel Mildred King NOBES,**
**Plaintiff–Appellant,**

v.

**Kathy EARHART and Burman Mathis,**
**Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 30, 1988.

Permission to Appeal Denied by
Supreme Court March 27, 1989.

Denty Cheatham and Jon S. Jablonski, Cheatham & Palermo, Nashville, for plaintiff-appellant.

Frank J. Runyon, Runyon & Runyon, Clarksville, for Kathy Earhart.

John Aaron Holt, Jacobs, Holt & Masten, Nashville, for Burman Mathis.

## OPINION

CANTRELL, Judge.

The plaintiff instituted this action against her ex-husband and the lawyer who represented her in the divorce proceedings. She seeks to set aside the divorce decree on the grounds of fraud and imposition and to secure a new decree. In addition, she seeks to recover damages for "fraud, deceit, misrepresentation, alienation of affections, breach of professional duties and breach of fiduciary duties and confidential relations." The court below dismissed the plaintiff's action against her ex-husband on the basis of res judicata; the court dismissed the action against the lawyer on the basis of the statute of limitations and failure to join parties and remedies. The plaintiff appeals.

*Facts*

For purposes of this appeal, this court must accept as true the facts set out in the plaintiff's complaint and construe them liberally in the plaintiff's favor. *See Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690 (Tenn.1984).

In early 1982, the plaintiff Hazel Nobes (then Hazel Mathis) sought the advice of an attorney, defendant Kathy Earhart, concerning domestic problems the plaintiff was having with her husband, defendant Burman Mathis. The plaintiff suspected that her husband was having an affair. She considered Ms. Earhart "a close friend as well as her attorney."

Ms. Earhart agreed to represent the plaintiff. She advised her client to file for divorce on the grounds of irreconcilable differences. Based on Ms. Earhart's advice, the plaintiff accepted a property settlement giving her the house and an acre of land and giving her husband the remainder of their farm, along with livestock and equipment. Mr. Mathis did not retain an attorney for the divorce proceedings; the plaintiff took a default against him. The divorce decree was filed on June 14, 1982.

While the divorce proceedings were pending, the plaintiff and her husband tried to reconcile. On the day when the decree was entered, Mr. Mathis and Ms. Earhart talked about the proper steps to take should the plaintiff and Mr. Mathis reconcile. Ms. Earhart indicated that the entry of a reconciliation order would nullify the divorce. A few days later, the plaintiff and Mr. Mathis reconciled. Ms. Earhart prepared an order of reconciliation, which was filed on July 8, 1982. Ms. Earhart advised the plaintiff that the reconciliation order would nullify the divorce unless the parties filed additional papers within six months to reinstate the divorce. The plaintiff and Mr. Mathis resumed living together and held themselves out as husband and wife.

Paragraph 17 of the plaintiff's complaint, which is central to the issues raised on appeal, alleges that the following events occurred a few months after the divorce decree:

[P]laintiff received information, by gossip or rumor, that the defendant EARHART was the "other woman" who had interfered with her marital relationship with the defendant MATHIS. She confronted the defendant EARHART with this, but the said KATHY EARHART vehemently denied it. At this time the defendant EARHART was having a relationship with another man, and was planning to marry him, and she told plaintiff she would kill, or have killed, anyone who did anything to mess up her planned marriage, and displayed a pistol to plaintiff.

In December of 1985, approximately three and a half years after the entry of the reconciliation order, the plaintiff and Mr. Mathis separated. The plaintiff consulted attorney Mark Rassas, who, in February of 1986, filed a motion to set aside the reconciliation order and reopen the di-

vorce proceedings. The court allowed the plaintiff to file a motion for a new trial. In September of 1986, the court issued an order denying the motion for a new trial, but awarding the plaintiff a judgment representing the division of assets accumulated during the post-divorce reconciliation period. (The Western Section of this court subsequently affirmed the lower court's denial of the new trial motion, which it treated as a motion pursuant to Tenn.R.Civ.P. 60.02(5), and reversed the division of post-divorce assets.)

In August of 1986 (after the hearing on the motion for a new trial), Mr. Mathis told the plaintiff that he and Ms. Earhart had been carrying on an adulterous relationship prior to and during the divorce proceedings in 1982. (The adulterous relationship had ended in 1982.) Thus, at the time when the plaintiff consulted Ms. Earhart to represent her in the divorce action, Ms. Earhart was having an affair with the plaintiff's husband. Despite her involvement with Mr. Mathis, Ms. Earhart agreed to represent the plaintiff in the divorce. According to the complaint, Ms. Earhart assured Mr. Mathis "that she had taken care of him in the divorce settlement by making no provision for any alimony for plaintiff." Moreover, the complaint alleges that Ms. Earhart attempted to thwart reconciliation efforts and told Mr. Mathis that she would kill herself if he did not go through with the divorce.

The complaint alleges that, throughout their adulterous relationship, Mr. Mathis and Ms. Earhart concealed their affair from the plaintiff:

> In order to do this, they concealed facts from her, created false or misleading impressions and, when necessary, made deliberately false statements to plaintiff and anyone else defendants thought it was necessary to deceive, in order to prevent plaintiff from learning the truth.

The complaint goes on to allege that, after the affair had ended, Mr. Mathis and Ms. Earhart "continued to conceal the fact of their prior adulterous relationship."

Based on these facts, the plaintiff instituted the present action to set aside the divorce decree on the grounds of fraud and imposition. She seeks a new decree to effectuate a "fair and just division of the property acquired during the parties' marriage"; she also argues that, based on a change in the law since the original divorce decree, she should receive half of Mr. Mathis's military retirement benefits after December of 1985. In addition to attacking the divorce decree, the plaintiff seeks to recover compensatory and punitive damages for "fraud, deceit, misrepresentation, alienation of affections, breach of professional duties and breach of fiduciary duties and confidential relations." The plaintiff argues that Mr. Mathis should be held jointly liable with Ms. Earhart due to his acquiescence in the fraud, his fraudulent concealment, and his enjoyment of the benefits of the fraud in the form of a favorable divorce settlement.

The trial court granted motions to dismiss as to both defendants. As to Ms. Earhart, the court concluded that the plaintiff's action is barred by the applicable statute of limitations and by the plaintiff's failure to join parties and remedies. As to Mr. Mathis, the court found the plaintiff's action barred by res judicata.

The court denied the plaintiff's motion to amend the findings of fact and conclusions of law and/or to grant a new trial or other relief from the judgment. This appeal followed.

### *Statute of limitations*

■ The trial court ruled that the plaintiff's action for damages against Ms. Earhart was barred by the one-year statute of limitations in Tenn.Code Ann. § 28-3-104(a) (1980). Under the rule of *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn.1974), a medical malpractice action accrues "when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." This rule has been applied to legal

malpractice cases. *See Memphis Aero Corp. v. Swain*, 732 S.W.2d 608 (Tenn.Ct. App.1986). Applying the rule to the facts of this case, the trial court reached the following conclusion:

> Plaintiff was apprised of all the information necessary to base a suit upon fraud, deceit, misrepresentation and legal malpractice in 1982 when she received the information contained in paragraph 17 of her Complaint. The damage or injury, if any, resulting to her from those alleged acts of both Defendants had occurred, and she was then required to exercise reasonable care and diligence to make inquiry into the matter, having discovered the basis for the present action.

Thus, the court determined that the one-year statute of limitations had run.

We disagree with the conclusion of the trial judge. While this court, like the trial court, is hampered in its analysis of the issues by the plaintiff's failure to state clearly the causes of action she is asserting against Ms. Earhart, we think the allegations in the complaint as to Ms. Earhart state the following: (1) a cause of action for malpractice for allowing the divorce decree to become final while the parties had reconciled and were living together as man and wife; (2) a common law cause of action for fraud and deceit; and (3) a cause of action for malpractice resulting from the fraud and deceit and from the breach of professional and fiduciary duties. Although the complaint mentions alienation of affections, there are no factual allegations that state the elements of that cause of action. *See Donnell v. Donnell*, 220 Tenn. 169, 415 S.W.2d 127 (1967); *Archer v. Archer*, 31 Tenn.App. 657, 219 S.W.2d 919 (1947).

■ As to the first cause of action, there is nothing in the record to indicate that the plaintiff knew she and Mr. Mathis were in fact divorced until she moved to reinstate the divorce proceeding in February of 1986. Since this action was filed in December of 1986, the one year statute of limitations clearly had not run.

■ As to the two remaining causes of action, we disagree with the trial court's determination that the gossip and rumors heard by the plaintiff in mid–1982 were sufficient to put her on inquiry as to the fraud allegedly perpetrated by the defendants. Under the facts of this case, we conclude that it was reasonable for the plaintiff not to discover the fraud until Mr. Mathis confessed to her in August of 1986.

At the time when the plaintiff heard rumors of the affair, she had recently reconciled with Mr. Mathis. The gossip described what might seem an improbable scenario—that the plaintiff's divorce lawyer and her husband had had an affair. The complaint does not indicate the reliability of the source from which the rumors came. Under these circumstances, it may have been reasonable for the plaintiff to dismiss the information as idle gossip. Nevertheless, the plaintiff confronted Ms. Earhart.

Ms. Earhart argues that, at the time of this confrontation, she was no longer the plaintiff's lawyer. However, since the confrontation occurred only a few months after the filing of the reconciliation order and within the six-month period during which Ms. Earhart had indicated that the couple could reactivate the divorce, we find that it was reasonable for the plaintiff to view Ms. Earhart as her lawyer.

When confronted with the rumors, Ms. Earhart vehemently denied them. Although Ms. Earhart's violent reaction to the charges (in pulling a gun) may have been alarming, Ms. Earhart provided an explanation for her behavior. While the complaint does not state that the plaintiff confronted Mr. Mathis, it does allege that both defendants acted to conceal their adulterous relationship from the plaintiff by deceiving her and others. Ironically, the same two people who sought to prevent the plaintiff from finding out about their affair now argue that she should have found out about it—despite their concealment.

Under Tennessee law, "[i]t is well recognized that fraudulent concealment prevents

the running of the statute of limitations and that the statute begins to run from the time of discovery of the fraud." *Howell v. Davis,* 43 Tenn.App. 52, 60, 306 S.W.2d 9, 12–13 (1957). The plaintiff alleges fraudulent concealment. Moreover, the alleged concealment was carried out by the man whom the plaintiff thought to be her husband (due to Ms. Earhart's advice) and by her lawyer, whom she considered a close friend. A person is entitled to place trust in those with whom she shares a confidential relationship. *See generally Howell v. Davis,* 43 Tenn.App. at 59–60, 306 S.W.2d at 12–13 (husband-wife); *Cultra v. Douglas,* 60 Tenn.App. 116, 444 S.W.2d 575 (1969) (lawyer-client). *See also Larson v. McMillan,* 99 Wash. 626, 170 P. 324 (1918); *Morrill v. Palmer,* 68 Vt. 1, 33 A. 829 (1895) ("wife" entitled to rely on representations of "husband" that he was unmarried despite awareness of some suspicious information).

Under these circumstances, we hold that it was reasonable for the plaintiff not to discover the affair until Mr. Mathis confessed. Therefore, the plaintiff's action for damages against Ms. Earhart is not barred by the statute of limitations.

### *Joinder*

■ As a second ground for dismissing the plaintiff's action against Ms. Earhart, the trial court decided that the plaintiff should have raised these matters in the previous action:

> Plaintiff is attempting to litigate in the present action matters which she should have raised, if raised at all, in the litigation which was heard on appeal. T.R.C. P. 18.02 contemplated that there could and should be a joinder of remedies in a single action, and, in T.R.C.P. 19.01, that all necessary parties *shall* be joined in order that complete relief could be accorded among all the parties. The Plaintiff has split her causes of action and, therefore, should be barred from prosecuting further this litigation.

In essence, the court found the damages action against Ms. Earhart barred by res judicata (although the court did not use the term "res judicata" in this part of its opinion).

The trial court erred in concluding that the plaintiff "split her causes of action." If a plaintiff "splits his cause of action, sues for only part of his damages, and recovers a judgment for less than the total amount of his damages," he is precluded from bringing suit for the rest of the damages. *Hawkins v. Dawn,* 208 Tenn. 544, 548, 347 S.W.2d 480, 481 (1961). Principles of res judicata bar "a second suit ... on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Massengill v. Scott,* 738 S.W.2d 629, 631 (Tenn.1987). In applying these principles, however, it is crucial to distinguish between the subject matter of an action and a cause of action; the same subject matter may give rise to a new cause of action. *New York Life Ins. Co. v. Nashville Trust Co.,* 200 Tenn. 513, 525, 292 S.W.2d 749, 755 (1956). In her damages claim, the plaintiff is not attempting to relitigate the divorce cause of action; rather, she is pursuing a separate cause of action which concerns some of the facts surrounding the divorce action.

The trial court referred to Tenn.R.Civ.P. 18.02 and 19.01. Due to its permissive nature, Tenn.R.Civ.P. 18.02 cannot be used to penalize the plaintiff. Tenn.R.Civ.P. 19.-01 requires joinder of a party if "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action" and his presence is required to protect the rights of all interested parties. Even if the plaintiff had known about the fraud in time to join the damages claim in the divorce action, the joinder of that claim was not necessary to the resolution of the divorce action. Although the divorce action and the fraud/malpractice action arose out of some of the same facts, they are separate causes of action. It would indeed be anomalous to require a malpractice claim against a divorce attorney to be brought within the original divorce action.

## Res judicata

The trial court dismissed the plaintiff's suit against Mr. Mathis on the grounds of res judicata. The court concluded that "the grounds of relief sought by the Plaintiff seeking to modify the Divorce Decree and require a division of marital property and an award of a portion of Defendant's military retirement benefits" had been "litigated in the matters reviewed by the Appellate Court...."

The court's res judicata analysis seems to cover only the plaintiff's action to set aside the divorce decree and replace it with a new decree. The court does not mention, in its res judicata analysis, the plaintiff's action for damages against Mr. Mathis (along with Ms. Earhart). However, for the reasons discussed in the preceding analysis on joinder, res judicata would not bar the damages action.

■ As to the plaintiff's action to set aside the divorce, Mr. Mathis asserts that the denial of the plaintiff's Rule 60 motion in the original divorce action precludes this independent action based on fraud. This argument must fail because, at the time of the Rule 60 motion, the fraud had not been discovered, and therefore could not have been raised in the motion. By the time the plaintiff discovered the fraud, the one-year time limit in Tenn.R.Civ.P. 60.02(2) had passed and a motion pursuant to Tenn.R.Civ.P. 60.02(5) had been denied as untimely. Thus, her only avenue for relief was an independent action. *See generally* Tenn.R.Civ.P. 60; *Brown v. Raines,* 611 S.W.2d 594, 597 (Tenn.Ct.App.1980).

■ The trial court was correct in saying that the matters raised in the plaintiff's action to set aside the divorce were litigated in the original divorce decree. Nonetheless, the plaintiff seeks to set aside the original decree on the basis of fraud. A judgment obtained through extrinsic fraud has no res judicata effect. *New York Life Ins.,* 200 Tenn. at 513, 292 S.W.2d at 749. In an independent action to set aside a judgment based on fraud, the plaintiff must establish extrinsic fraud. *Id.*

■ Extrinsic fraud is not easily definable. Several Tennessee cases have quoted with approval the following language from a California case:

"That a former judgment or decree may be set aside and annulled for some frauds there can be no question, but it must be a fraud extrinsic or collateral to the questions examined and determined in the action.... The reason of this rule is that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party has by some extrinsic or collateral fraud prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from court by a false promise of a compromise, or purposely keeping him in ignorance of the suit, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest."

*Noll v. Chattanooga Co.,* 38 S.W. 287, 290–291 (Tenn.Ch.App.1896) (quoting *Pico v. Cohn,* 91 Cal. 129, 25 P. 970, 971 (1891)); *see also Keith v. Alger,* 114 Tenn. 1, 21–22, 85 S.W. 71, 76 (1905). Thus, extrinsic fraud involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing. Another California case indicates that deception by a person standing in a confidential or fiduciary relationship to the defrauded party may constitute extrinsic fraud. *Crow v. Madsen,* 111 P.2d 7, 14 (Cal.Dist.Ct.App.), *rehearing granted and appeal dismissed per stipulation,* 111 P.2d 663 (Cal.Dist.Ct.App.1941).

The fraudulent acts of which the plaintiff accuses the defendants constitute extrinsic

fraud. According to the allegations in the complaint, Ms. Earhart and Mr. Mathis duped the plaintiff and the court into believing that Ms. Earhart was looking out for the best interests of the plaintiff. The defendants concealed important facts from the plaintiff and the court which affected the fairness of the divorce proceedings. The plaintiff had no reason to examine her lawyer's loyalty, which was not at issue in the divorce proceedings.

Due to the allegations of extrinsic fraud, the divorce judgment and the prior opinion of this court do not bar the present independent action.

The judgment of the court below is reversed as to both defendants and the cause is remanded to the Chancery Court of Stewart County for further proceedings. Tax the costs on appeal to the appellees.

TODD, P.J., and LEWIS, J., concur.