IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 17, 2004 Session

## KATHRYN C. BLACK v. STEVAN L. BLACK

**An Appeal from the Chancery Court for Shelby County**
**No. CH-03-0315-3     D. J. Alissandratos, Chancellor**

---

**No. W2003-01648-COA-R3-CV - Filed July 13, 2004**

---

This is an independent action for fraud and coercion based on a marital dissolution agreement.  On September 13, 2000, the parties executed a marital dissolution agreement, and they were divorced by final decree entered in circuit court ninety days later on December 12, 2000.  In February 2003, the wife brought this independent action in the chancery court below for damages for fraud, deceit, and coercion.  She alleged that the husband had coerced her into signing the marital dissolution agreement by the use of threats, had prevented her from obtaining the benefit of counsel, and had misrepresented the value of his marital assets.  The husband filed a motion to dismiss, alleging that the wife had failed to state a claim upon which relief could granted.  The trial court dismissed the wife's lawsuit, determining that the complaint was essentially an action to set aside the divorce decree, and that the wife did not set out sufficient facts to support that claim.  From that decision, the wife now appeals.  We affirm, finding that the allegations in the complaint cannot be the basis for an independent action essentially to set aside the divorce decree.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which JOE G. RILEY, SP. J., and FRANKLIN MURCHISON, SP. J., joined.

Hal Gerber and Margaret M. Chesney, Memphis, Tennessee, for the appellant, Kathryn C. Black.

Daniel L. Taylor, Memphis, Tennessee, for the appellee, Stevan L. Black.

### OPINION

On October 6, 1990, Plaintiff/Appellant Kathryn C. Black ("Wife") and Defendant/Appellee Stevan L. Black ("Husband") were married.  One child was born of the marriage.  Husband is a lawyer with a practice that focuses on domestic relations law.

On September 13, 2000, Husband and Wife signed a Marital Dissolution Agreement ("MDA") setting forth the parties' respective rights to property and other matters arising out of the

marital relationship. On the same day, the MDA was filed in the clerk's office of the Shelby County Circuit Court.[1] On November 29, 2000, the parties executed an amendment to the MDA. Husband drafted both the MDA and the amendment thereto.

On December 12, 2000, ninety days after the original MDA was signed, a final decree of divorce was entered by the circuit court. The parties did not have independent counsel, but represented themselves, *pro se,* during the divorce proceedings.

On February 14, 2003, over two years after the divorce became final in the circuit court, Wife filed the instant lawsuit against Husband in the chancery court below. Wife's complaint was entitled "Complaint For Damages For Fraud, Deceit and Coercion." In the lawsuit, Wife alleged that Husband had engaged in fraud and coercion in inducing her to sign the MDA. Wife claimed as follows:

A.	On or about September 8, 2000, Defendant presented Plaintiff with a proposed Marital Dissolution Agreement. When she told Defendant she wanted to have the advice of counsel, Defendant then told her if she did so, and if she did not sign the document, he would have her prosecuted for child abuse and put in jail; that he would see to it that she would never see her children again; that she would have to pay hundreds of thousands of dollars in legal fees; that she would receive nothing in the event of a divorce and she would have to pay child support.

B.	Plaintiff refused to sign the Marital Dissolution Agreement, but reverted to drinking and remained under the influence of alcohol to and including, on or about September 13, 2000, when she was driven to the airport by Defendant to depart for an Alcoholics Anonymous convention at which time Defendant repeated these threats, if she did not sign the Marital Dissolution Agreement. As the [sic] result, due to the capacity and willingness of the Defendant to carry out his threats, she executed the document.

C.	Defendant fraudulently concealed his true net worth in that:

1.	He withheld the net equity value of real estate owned by him;

2.	He withheld the identity and value of securities owned by him;

3.	He withheld the value of his law practice as well as the furniture, furnishings and equipment contained in his office . . . .

_____

[1]The record on appeal does not include a petition for divorce filed by either party, although the MDA states that "Husband will be filing a complaint for absolute divorce against Wife in the courts of Shelby County, Tennessee." Apparently, the MDA was the first document filed in the divorce proceedings.

In sum, Wife alleged that Husband prevented her from retaining her own lawyer and obtained her signature on the MDA through the use of threats and coercion, and that Husband fraudulently concealed his true net worth. Wife sought $1,000,000 in compensatory damages, plus punitive damages for Husband's wrongful conduct.

On April 16, 2003, Husband filed a motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. He argued that Wife's complaint was in reality a motion to set aside the MDA which was incorporated in the parties' final decree of divorce, entered by the circuit court. On May 23, 2003, a hearing was held on Husband's motion to dismiss. At the conclusion of the hearing, the chancellor granted the motion. The chancery court held that Wife's chancery lawsuit, "though . . . word[ed] in terms of a tort, . . . really effectively is more of a setting aside [or] modifying the divorce . . . ." (Trans. 2). The chancellor reasoned:

> . . . When one looks at this complaint and looks at the facts that are alleged, one has to take a look at the context of the very nature of the beast of the circumstances that brings this about. The parties were in obviously a rather acrimonious divorce. In that context, [Wife] maintains that she was a recovering alcoholic but still under the influence of alcohol. That in and of itself is not a circumstance by which she can say I now seek the protection of the Court.
>
> She alleges in the light most favorable to her that in the middle of this knock-down, drag-out divorce, [Husband] was taking a very strong position, that he was telling her in essence to sign this document or I'm going to go after you with all the might of the law in such a circumstance regarding the children of this marriage. Terrible as that may seem, it is nevertheless part of what acrimonious divorces are about. To say that that sounds under the tort of coercion when he said either sign this, or if you don't sign it, I'm going full bore against you, that is hard-ball negotiations, perhaps harsh, but not tortious.
>
> ***
>
> . . . [W]hen the Court looks at the substance of the complaint and the nature of what was going on which is that this sounds in a domestic relations case to begin with, it is an acrimonious divorce to begin it, [sic] is the nature of the beast that people who have the closest relationship in the world they can have as a husband and wife and they turn on each other, it gets really fierce and nasty, it is the nature of the beast that you are going to have a certain amount of this kind of unpleasant discussion.

Thus, the chancery court found that Wife's lawsuit against Husband was, in essence, an independent action to set aside the divorce decree based on fraud. Treating it as such, the chancery court concluded that the complaint did not set out facts that would support such a claim. The chancery court observed that Husband's threats and "hard-ball negotiations" were harsh, but not fraudulent. The chancery court did not address Wife's claim that Husband had misrepresented the value of his

assets. On June 19, 2003, the chancery court entered an order granting Husband's motion to dismiss. From that order, Wife now appeals.

On appeal, Wife argues that the chancery court erred in determining that her lawsuit was, in essence, an action to set aside the divorce decree. She asserts that her lawsuit is an independent action based on duress, coercion, fraud, and deceit, and that she seeks only damages and does not request rescission of the parties' MDA. Wife argues further that the chancery court erred in dismissing her complaint based on its conclusion that the facts alleged did not state a cause of action for fraud, because that conclusion was based on alleged "facts" outside the pleadings that were not in the record. She observes that the chancellor surmised that the parties had an acrimonious, "knock-down, drag-out" divorce, when the record of the divorce proceedings in circuit court showed only the filing of an MDA and the granting of a divorce ninety days thereafter. Wife argues that, because there was no evidence in the record to support the chancery court's findings in this regard, Husband's motion to dismiss was improperly granted.

In an appeal from a grant of a defendant's motion to dismiss a complaint pursuant to Rule 12.02(6), the appellate court must take all allegations of fact in the plaintiff's complaint as true and review the trial court's legal conclusions *de novo* with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *see also Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). A Rule 12.02(6) motion tests only the sufficiency of the complaint, not the strength of a plaintiff's proof. *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979). The motion to dismiss should be denied unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Winchester*, 996 S.W.2d at 821-22.

As we have noted, Wife argues that this lawsuit is an independent action for fraud and coercion, and not, as the chancery court concluded, essentially a Rule 60.02 motion to set aside the MDA. In support, Wife relies on *Moore v. Moore*, No. 01-A-01-9708-CV-00444, 1998 WL 848091 (Tenn. Ct. App. Dec. 8, 1998), and *Tanner v. Tanner* (Tenn. Ct. App. July 31, 1997), *cited in Moore*, 1998 WL 848091, at *2. In *Moore*, while the parties' divorce was pending in circuit court, they settled the distribution of the value of the parties' marital home. Thereafter, in May 1996, the final decree of divorce was entered in circuit court. In January 1997, the husband filed a lawsuit in chancery court accusing the wife of fraudulent misrepresentation in the negotiation of the marital home settlement during the pendency of the circuit court divorce proceedings. The husband alleged that the wife, who was a real estate agent, and her attorney intentionally misrepresented to him the value of the real estate, knowing that the value was much higher than the amount on which they relied in dividing the property in the circuit court divorce proceedings. *Moore*, 1998 WL 848091, at *1.

The wife in *Moore* filed a motion in chancery court to dismiss the husband's chancery lawsuit, asserting that the husband was estopped from raising the fraud issue in the chancery court, because the final decree entered in the circuit court was *res judicata* and because the circuit court had exclusive jurisdiction over the matter. In addition, the wife filed a Rule 60.02 motion in the

circuit court in which the divorce decree was entered, requesting that the circuit court determine whether a fraud had been perpetrated on the court. The wife asserted in the circuit court motion that the husband's chancery court lawsuit was frivolous and sanctionable under Rule 11. *Id.* The chancery court denied the wife's chancery motion to dismiss, but held in abeyance other matters until the circuit court ruled on the Rule 60.02 motion pending in that court. *Id.*

The circuit court in *Moore* held a hearing on the wife's Rule 60.02 motion. At the conclusion of the hearing, the circuit court determined that the issue involving husband's interest in the marital home was *res judicata* and binding on the chancery court. The circuit court held further that the parties' settlement agreement was not contractual, but that it became part of the divorce decree entered by the circuit court. Finally, the circuit court assessed Rule 11 sanctions against the husband for filing the separate lawsuit in chancery court, concluding that the chancery court lawsuit was frivolous. *Id.* at *1-*2. The husband then appealed the ruling of the circuit court.

On appeal, the *Moore* court reversed the decision of the circuit court in its entirety. The appellate court reasoned that the husband's chancery court action was not an action for relief from the divorce decree entered in the circuit court. Rather, it concluded, "the chancery court action is an action for damages based on fraud and deceit." *Id.* at *2. Quoting *Tanner*, the court held:

> This is a separate, independent, and distinct action. . . . Notwithstanding that the property settlement agreement may have been incorporated into the divorce decree, one option available to plaintiff to seek redress for the alleged fraud of defendants is to sue for damages at law under the theory of fraud and deceit.

*Id.* The *Moore* court added that "the agreement to divide the marital home does retain its contractual status, despite being incorporated into the circuit court's order [the final divorce decree]." *Id.* (citing *Penland v. Penland*, 521 S.W.2d 222 (Tenn. 1975)). As to the Rule 11 sanctions imposed on the husband by the circuit court, the appellate court in *Moore* noted that the only action pending in circuit court was the wife's Rule 60.02 motion, and that the husband had sought no relief from the circuit court. Consequently, the circuit court's imposition of sanctions against the husband for any action he may have taken in chancery court was "misplaced." *Id.* The court held that the circuit court had no power to judge the merits of the husband's chancery lawsuit:

> It may be that Mr. Moore's chancery action is frivolous, we take no position on the merits of that case, but the chancery court has the tools to deal with frivolous lawsuits. We simply recognize that Mr. Moore had the right to file the chancery action and that the circuit court had no power to rule on its merits or to impose sanctions for its filing.

*Id.* Thus, the *Moore* court described the husband's chancery lawsuit as an independent action and,

without commenting on whether the chancery court should dismiss it, simply held that the circuit court had no authority to take action against the husband for filing a separate chancery complaint.

In *Tanner, supra*, the husband told the wife he wanted a divorce. *Tanner*, at *2. In an effort to reach an agreement regarding the terms of the divorce, the wife met with defendant Lucas, general counsel for the husband's business. *Id.* at *2-3. Defendant Lucas prepared a property settlement agreement and made arrangements for the wife to consult with another attorney, selected by Lucas. *Id.* at *3. After the wife's purportedly "independent" attorney reviewed the proposed agreement, the wife signed it. *Id.* The property settlement agreement provided for the wife to receive assets worth approximately $300,000, plus alimony of $100,000 per year for the rest of her life. *Id.* at *4. The property settlement agreement was incorporated into a decree of divorce entered in Tipton County in approximately 1979. *Id.*

Subsequently, in May 1982, the wife discovered that the husband had sold his business for in excess of $39 million in cash, and had also obtained an employment agreement with the purchaser for a salary of $400,000 per year. *Id.* at *5. After learning of this, the wife hired an attorney and filed a lawsuit in Shelby County against her former husband and defendant Lucas, who was also the attorney for the ex-husband's company. The wife alleged that her ex-husband and defendant Lucas knew the ex-husband's true financial worth at the time of the property settlement and conspired to conceal it from her. She indicated that the purportedly "independent" counsel, hired for her by defendant Lucas and paid by the ex-husband, was not in fact independent. She asserted that they conspired to defraud her of her rightful interest in the couple's marital property. *Id.* at *5-7. The wife did not file an action in Tipton County, the court which granted the decree of divorce.

In the Shelby County lawsuit, the *Tanner* defendants filed a motion to dismiss, alleging, *inter alia*, failure to state a claim upon which relief can be granted and lack of jurisdiction. *Id.* at *1. The trial court granted the motion, without specifying its reasons for doing so. *Id.* at *2.

On appeal, the appellate court in *Tanner* considered the allegations against defendant Lucas, the attorney for the husband's business, as well as the allegations against the ex-husband. Taking the wife's allegations against both defendants as true, the *Tanner* court found that the complaint stated a claim upon which relief could be granted, and that the trial court erred in dismissing the complaint on that ground. *Id.* at *9.

The *Tanner* court then considered the question of jurisdiction. Both defendants relied on divorce caselaw, stating that a divorce action providing for support of a spouse and children remains in the court in which the divorce decree was granted, *i.e.*, the Tipton County court. *Id.* at *10-11. The *Tanner* court noted that defendant Lucas certainly could not rely on this principle, since he was not a party to the divorce. *Id.* at *11. As to the ex-husband, the *Tanner* court held:

> . . . this defense is likewise without merit. [The wife's] action is not
> a suit to void the divorce decree or to modify the property settlement
> agreement in any way. [The wife] has filed a tort action based upon

> fraud and deceit, not one ex contractu, in that she contends that for over two years defendants Tanner and Lucas conspired to deceive her as to the net worth of defendant Tanner, and through fraud and deceit induced her to sign a property settlement agreement for a much smaller share of defendant Tanner's property than she would have accepted had she known the true facts. This is a separate, independent and distinct action based on the ongoing conduct of these two defendants prior to and leading up to the divorce action.

*Id.* at \*12. The ***Tanner*** court observed that the wife could sue for damages at law despite the fact that the property settlement agreement was incorporated into a divorce decree. ***Id.***

In this case, in response, Husband argues that the facts presented are distinguishable from ***Moore*** and ***Tanner***, and that they are more analogous to the situation in ***Schorr v. Schorr***, No. 02A01-9409-CH-00217, 1996 WL 148613 (Tenn. Ct. App. March 29, 1996). In ***Schorr***, the parties were both represented by attorneys in their divorce, and there was extensive discovery . Ultimately, they entered into a settlement agreement, and in February 1984, a divorce decree was entered in chancery court, incorporating that agreement. ***Schorr***, 1996 WL 148613, at \*1.

Later, the wife in ***Schorr*** discovered that the husband had misrepresented his assets before the parties entered into the marital dissolution agreement. In March 1987, the wife filed a lawsuit in the same chancery court in which the divorce was granted, seeking damages based on the allegation that the husband had fraudulently induced her into signing the settlement agreement by giving her false information. The wife sought, among other things, "a fair and equitable division of marital property based upon the truthful disclosure and an accurate total of the parties' assets as of the date of the divorce . . . ." ***Id.*** The case proceeded to trial, and the wife was awarded $613,000, plus fees and expenses.

On appeal, the husband in ***Schorr*** claimed that the wife's lawsuit was barred by the doctrine of *res judicata*, arguing that the wife did not avail herself of the remedy provided in Rule 60.02 of the Tennessee Rules of Civil Procedure to ask the divorce court to set aside the divorce decree. In addition, the husband argued that there were no allegations of extrinsic fraud that would allow the final decree to be set aside. The ***Schorr*** court stated at the outset that it viewed the wife's lawsuit as essentially an action to set aside or modify the divorce decree based on fraud. The court reasoned:

> In an action to set aside a final judgment, a litigant may pursue the options set forth in Tenn. R. Civ. P. 60.02 or, as preserved by the rule's savings clause, the party may bring an independent action. ***Jerkins v. McKinney***, 533 S.W.2d 275, 280 (Tenn. 1976). Ms. Schorr chose the latter alternative to bring the present suit, presumably because a Rule 60 proceeding was time barred. Generally, a party may file an independent action to set aside a

> judgment only under unusual and exceptional circumstances, and then only where no other remedy is available or adequate.

*Id.* at *2. The court went further and stated that, "[i]n an independent action to set aside a judgment on the basis of fraud, the complaining party must prove extrinsic, as opposed to intrinsic, fraud." The only fraud allegedly perpetrated on the wife was the husband's misrepresentation of his assets. The appellate court concluded that, because the value of the husband's assets was the subject of extensive discovery and investigation during the divorce proceedings, the husband's fraudulent concealment of the true value of those assets was a fraud that was intrinsic to the litigation and, therefore, was not a basis on which the trial court could set aside or modify the final decree. *Id.* at *6. In other words, since there was no proof of extrinsic fraud, the court concluded that the trial court erred in modifying the divorce decree. *See Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 230 (Tenn. Ct. App. 2000) (quoting *Schorr* and stating that, "[i]n an independent action to set aside a judgment on the basis of fraud, the complaining party must prove extrinsic as opposed to intrinsic fraud").

Husband argues that the facts of the instant case are analogous to the situation in *Schorr*, and that Wife's action is essentially an action to set aside the final decree based upon fraud. Therefore, Husband claims, in order to maintain an independent lawsuit against him, Wife must allege that he engaged in fraud that was extrinsic to the litigation under the rule in *Schorr*. Because her only allegations of fraud deal with Husbands' misrepresentation of marital assets, Husband argues, Wife's claim is based on intrinsic fraud and must be dismissed on its face. In response, Wife insists that the instant case is an independent action, as in *Moore* and *Tanner*, rather than an action to set aside the MDA, like in *Schorr*. Wife points out that the plaintiff in *Schorr* filed her action in the divorce court under the same docket number, and that she specifically sought modification of the settlement agreement in that case. In contrast, Wife claims, this is an independent action, filed in a separate court, seeking damages based on coercion, deceit, and fraud. Under *Moore* and *Tanner*, she argues, she is entitled to maintain her independent action, regardless of whether she alleges extrinsic fraud.

A divorce decree, incorporating by reference an MDA "as though copied herein verbatim," has the same *res judicata* effect as would any other order entered by a court of competent jurisdiction. *Gracey v. Gracey*, 300 S.W.2d 606, 608 (Tenn. 1957); *see Johnston v. Johnston*, 465 A.2d 436, 443 (Md. 1983) (citing numerous cases which hold that issues resolved in the MDA and incorporated in the divorce decree cannot be collaterally attacked); *see also* E. H. Schopler, Annotation, *Decree as Res Judicata in Independent Action Involving Property Settlement Agreement*, 32 A.L.R.2d 1145, § 4(a) (1953). Under general principles of *res judicata*, a litigant is barred from relitigating in a subsequent lawsuit issues that were or could have been raised in the former lawsuit. *See Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 WL 418352, at *13 (Tenn. Ct. App. June 22, 1999).

In this case, the MDA between these parties contains the following paragraph:

26.      Husband and Wife have each read this Agreement and acknowledge that they fully understand the provisions thereof, and that this is a fair and reasonable agreement and is not the result of any fraud, duress, or any undue influence exercised by either party herein upon the other, or by any other person or persons upon either of the parties. They further understand and agree that this

Agreement constitutes the entire understanding of the parties, there being no representation, promises, warranties, covenants, or undertakings other than those expressly set forth herein.

Thus, the agreement itself states that it was not the result of "fraud, duress, or any undue influence," and that it "constitutes the entire understanding of the parties." Clearly, the issues regarding fraud and duress in the execution of the MDA, which are the basis of the instant lawsuit, were expressly addressed in the former divorce proceeding. Wife's complaint in this lawsuit does not specifically request that the MDA or the divorce decree entered in circuit court be set aside. The relief sought, however, cannot be obtained without, in essence, setting aside or modifying the divorce decree, and litigating the issues of fraud and duress would necessarily constitute a collateral attack on the divorce decree. Such a collateral attack is impermissible under principles of *res judicata*.

Accordingly, construing the complaint in the light most favorable to Wife, we must conclude that it constitutes an independent action to set aside the divorce decree. Rule 60.02 of the Tennessee Rules of Civil Procedure provides:

**60.02. Mistakes – Inadvertence – Excusable Neglect – Fraud, etc.** – On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such

motion. ***This rule does not limit the power of a court to entertain an
independent action to relieve a party from a judgment, order or
proceeding, or to set aside a judgment for fraud upon the court.***
Writs of error coram nobis, bills of review and bills in the nature of
a bill of review are abolished, and the procedure for obtaining relief
from a judgment shall be by motion as prescribed in these rules or by
an independent action.

Tenn. R. Civ. P. 60.02 (emphasis added). As stated in ***Schorr***, "[i]n an action to set aside a final
judgment, a litigant may pursue the options set forth in Tenn. R. Civ. P. 60.02 or, as preserved by
the rule's savings clause, the party may bring an independent action." ***Schorr***, 1996 WL 148613,
at *2. Wife's chancery lawsuit is an independent action allowable under the savings clause of Rule
60.02. It is well established that a party seeking to maintain such an independent action "must prove
extrinsic, as opposed to intrinsic, fraud." ***Id.***, at *2; ***see also Simpkins v. Blank***, No. M2002-02383-
COA-R3-CV, 2003 WL 23093849 (Tenn. Ct. App. Dec. 30, 2003); ***Whitaker***, 32 S.W.3d at 230-31.

The reasoning behind the requirement of extrinsic fraud was explained most recently by this
Court in ***Simpkins v. Blank, supra***. In ***Simpkins***, the parties were divorced by final decree in June
2000 in circuit court. In July 2001, in the same circuit court, the husband filed a lawsuit seeking to,
among other things, set aside the parties' MDA, which had been incorporated into the parties'
divorce decree. The husband alleged that the wife fraudulently misrepresented the value of one of
her assets. ***Id.*** at *1. Because the petition was filed more than one year after the entry of the final
decree of divorce, the court surmised that the husband could not maintain a motion to set aside the
judgment based on intrinsic fraud under Rule 60.02(2). Therefore, the ***Simpkins*** court reasoned, the
husband's petition was an independent action to set aside the decree under the savings clause of Rule
60.02. ***Id.*** at *6. ***Simpkins*** reiterated the rule that, in such an action, "the complaining party must
prove extrinsic, as opposed to intrinsic, fraud." ***Id.*** The court explained that, under the common-law
rule, a party was required to prove intrinsic fraud during the trial, in a motion for a new trial, or on
appeal. Rule 60.02(2) alleviated the harshness of the common-law rule by allowing the party one
year after the final judgment in which to bring claims of intrinsic fraud. A claim of extrinsic fraud,
on the other hand, could be brought more than one year after the final judgment. The reason for the
differentiation lies in the basic difference between the two types of fraud. The ***Simpkins*** court
explained:

Extrinsic fraud concerns conduct extrinsic or collateral to the issues
decided in a case. ***Schorr***, 1996 WL 148613, at *3 (quoting ***Thomas
v. Dockery***, 232 S.W.2d 594, 598 (Tenn. Ct. App. 1950)).
"[E]xtrinsic fraud involves deception as to matters not at issue in the
case which prevented the defrauded party from receiving a fair
hearing." ***Noles v. Earhart***, 769 S.W.2d 868, 874 (Tenn. Ct. App.
1988). "[I]ntrinsic fraud is fraud within the subject matter of the
litigation, such as forged documents produced a trial or perjury by a

-10-

witness." ***Schorr***, 1996 WL 148613, at *3 (citing ***Dockery***, 232 S.W.2d at 598).

Because intrinsic fraud involves the subject matter of the litigation, the initial trial is the complainant's opportunity to expose the wrong. As the Tennessee Court of Chancery Appeals has stated:

> [W]hen [a complainant] has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence; and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue.

> ***Noll***, 38 S.W. at 291. The complainant has the opportunity to cross examine the fraudulent witness or present contradictory evidence of his own. Though this may end in harsh results, it is balanced against the prevention of a greater evil: "[e]ndless litigation, in which nothing [is] ever finally determined." ***Id.*** Extrinsic fraud, however, is such that the complainant was not afforded a "fair and honest opportunity" to present his evidence in a proceeding. ***New York Life Ins. Co.***, 292 S.W.2d at 753. Examples of this type of fraud include false promises of compromise, keeping a party ignorant of the suit, or where an attorney pretends to serve the interests of one party when he is serving the other or sells out his client's interests. ***Noll***, 38 S.W. at 29 (citing ***U.S. v. Throckmorton***, 98 U.S. 61, 66 (1878)). Unlike perjured testimony, this type of fraud cannot be rebutted by contradictory evidence or cross examination. For this reason, extrinsic fraud is a permissible independent action to overrule a final judgment.

***Id.*** Thus, intrinsic fraud involves fraud relating to the subject matter of the litigation, and extrinsic fraud involves issues outside the subject matter of the case that could not have been rebutted by contradictory evidence or cross examination. The ***Simpkins*** court determined that the wife's fraudulent misrepresentation of her asset value involved intrinsic fraud, because "the value of the property and the parties and its division was certainly at issue" in the divorce proceeding." ***Id.*** at *7 Consequently, "the only method by which [the husband] could bring an action to set aside the final divorce decree would be pursuant to Rule 60.02 rather than in an independent action." ***Id.*** Since the husband's action was beyond the one-year limit for such a claim, the trial court's dismissal of his suit was affirmed.

In the case at bar, Wife's complaint, when viewed in the light most favorable to her, includes only allegations of fraud relating to Husband's misrepresentations regarding his assets. She alleges that Husband fraudulently concealed his true net worth by misrepresenting the net equity of value in real estate, the identity and value of securities owned by him, and withheld the value of his law practice. Therefore, as in *Schorr* and *Simpkins*, Husband's alleged fraud in the misrepresentation of his net worth prior to signing the MDA involves intrinsic, not extrinsic, fraud.

Wife's reliance on *Moore* and *Tanner* is misplaced. *Moore* is clearly inapposite; the appellate court in that case stated expressly that it did not address the merits of the husband's independent chancery lawsuit. The *Moore* court noted that, on its face, the chancery lawsuit did not expressly seek to set aside the divorce decree previously entered by the circuit court. Consequently, the circuit court had no authority to sanction the husband for filing the separate chancery action. Instead, it was the place of the chancery court to dismiss the husband's lawsuit if it proved to be frivolous.

*Tanner* is distinguishable from the instant case, because the wife in *Tanner* alleged extrinsic fraud. To be sure, she contended that the husband misrepresented the value of his assets. In addition, however, she asserted that defendant Lucas, the husband's personal and business attorney, conspired with the husband and misrepresented the value of the husband's assets, and even hired a purportedly "independent" lawyer, paid by the husband, to "represent" the wife, all as an overall conspiracy to prevent her from discovering the husband's true net worth. This falls squarely within the description of extrinsic fraud in *Simpkins*, "where an attorney pretends he is serving the interests of one party when he is serving the other or sells out his client's interests." *Simpkins*, 2003 WL 23093849, at *6. Thus, *Tanner* is distinguishable.

As to Wife's allegations of fraud in this case, then, as in *Simpkins*, the only method by which she could bring an action to set aside the divorce decree would be pursuant to Rule 60.02, rather than an independent action. *Simpkins*, at *7; *see Schorr*, 1996 WL 148613, at *17. ("Even if we take as true all of the allegations made by [Wife] concerning [Husband's] fraudulent concealment of assets, . . . we are nonetheless constrained to hold that the fraud in this case was completely intertwined with the subject matter of the litigation.").

Unlike *Moore*, *Tanner*, *Schorr*, or *Simpkins*, Wife also alleges duress and coercion. In her complaint, Wife asserts that Husband told her if she hired an independent attorney and did not sign the MDA he had prepared, he would have her prosecuted for child abuse and thrown in jail, that he would see to it that she would never see her children again, and that she would pay hundreds of thousands of dollars and receive nothing in the divorce. Since Husband is a prominent domestic relations attorney, Wife believed that he had the ability to carry out these threats, so she signed the MDA.

Taking Wife's allegations as true, which we must, it is arguable that, akin to extrinsic fraud, Husband's alleged coercion deprived Wife of a "fair and honest opportunity" to present her evidence in the divorce proceeding. *See Simpkins*, 2003 WL 23093849, at *6. Unlike the situation presented

in a case involving extrinsic fraud, however, Wife was not ignorant of Husband's conduct at the time she signed the MDA, and consequently it is not unfair to subject her to the limits of Rule 60.02. Furthermore, the threats alleged in Wife's complaint, though harsh indeed, may be construed by a trial court as classic "hardball" settlement negotiations, that is, informing the opposing party of the dire consequences that could result from declining to settle the dispute. *See Wright Med. Tech., Inc. v. Grisoni*, No. W2000-01302-COA-R7-CV, 2001 WL 1683754, at \*21 (Tenn. Ct. App. Dec. 18, 2001) ("This is an ugly but unavoidable consequence of settlement negotiations; each side must try to convince the other than refusing to relent to its settlement demand will result in consequences that are worse than giving in to the settlement demand.")\*6. Wife has not cited, nor have we found, a case allowing an independent action to set aside a divorce decree to proceed based on duress or coercion. Moreover, we are mindful of the concern expressed in *Simpkins*, that we must work to prevent a "greater evil," that is, "[e]ndless litigation in which nothing [is] ever finally determined." *Simpkins*, 2003 WL 23093849, at \*6 (quoting *Noll v. Chattanooga Co.*, 38 S.W. 287, 291 (Tenn. Ct. App. 1896)). In light of all of these considerations, while we do not hold that there are no circumstances under which allegations of duress or coercion could be the basis for an independent action, under the circumstances of this case, Wife's allegations cannot be the basis for an independent action to set aside the final decree of divorce.

Consequently, taking Wife's allegations as true in their entirety, we must conclude that the chancery court did not err in dismissing Wife's lawsuit. Under the facts of this case, the only method by which Wife can challenge the divorce decree on the basis of Husband's conduct would be by filing a motion pursuant to Rule 60.02, quoted above, in the court in which the divorce decree was entered. Since more than a year has passed since entry of the final divorce decree, Wife obviously cannot seek to have the decree set aside for reasons (1) or (2) under the limitations set out in the rule. This does not, however, preclude Wife from seeking relief under reason (5), sometimes termed the "catchall" reason. We expressly take no position on the merits of such a motion.

The decision of the trial court is affirmed. Costs are to be taxed to Appellant Kathryn C. Black, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

-13-