IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2012 Session

## TIA GENTRY v. DALE LARKIN

**Appeal from the Circuit Court for Washington County**
**No. 29358    Jean A. Stanley, Judge**

**No. E2011-02402-COA-R3-CV - Filed July 13, 2012**

This appeal arises from a dispute over the settlement of a lawsuit. Teresa Larkin died in 2003, with her life insurance proceeds and her estate passing to her husband, Dale Larkin ("Larkin"). Teresa Larkin's minor daughter, Tia Gentry ("Gentry"), sued Larkin, her stepfather, alleging that he caused the death of her mother and that, as a result, he should not receive any life insurance proceeds or inheritance because of the "Slayer's Statute." Gentry and Larkin settled the lawsuit and split the life insurance proceeds and the estate of Teresa Larkin. Later, Larkin was convicted of first degree murder in the death of Teresa Larkin. Gentry filed this suit in the Circuit Court for Washington County ("the Trial Court"), seeking to overturn the agreement based upon fraud in the inducement as Larkin had represented that he did not kill Teresa Larkin. Larkin filed a motion to dismiss. The Trial Court held that the issues in this lawsuit already had been, or could have been, litigated, and, as inequitable as the result might seem in light of Larkin's conviction for first degree murder in the death of Teresa Larkin, Gentry's lawsuit must be dismissed. Gentry appeals. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Daniel B. Minor and William T. Wray, Kingsport, Tennessee, for the appellant, Tia Gentry.

Thomas C. McKee and Charles J. London, Johnson City, Tennessee, for the appellee, Dale Larkin.

# OPINION

## Background

Teresa Larkin died in 2003. The minor Gentry, through her natural father, Tony Garland Gentry, filed a wrongful death lawsuit against Larkin and several insurance companies. In her complaint, Gentry alleged that Larkin, either intentionally or negligently, killed Teresa Larkin. The complaint stated that Larkin was the named beneficiary under four life insurance policies carried by Teresa Larkin at the time of her death. The sum of these life insurance proceeds was approximately $703,000[1]. Gentry argued that under the so-called "Killing Statute," Larkin could not receive any of the insurance money. Gentry further alleged that she suffered grievous harm and trauma as a result of discovering the body of her mother. Gentry sought $5,000,000 in compensatory damages and $5,000,000 in punitive damages, as well as costs.[2]

Mediation efforts were initiated in the first lawsuit. All throughout this period, and, through the present date, Larkin has denied killing Teresa Larkin. At that point in the history of these parties, the relevant state officials declined to prosecute Larkin in connection with the death of Teresa Larkin. A settlement was reached in 2006. In August 2006, the Law Court for Washington County entered its "Order of Compromise and Dismissal, Order to Enforce Mediated Agreement and Order Approving Minor's Settlement." Under the approved settlement, Gentry received, among other things, $500,000 in insurance proceeds, of which $180,000 went for her attorney's fees. It bears repeating that were it not for Gentry's intervention on the basis of the "Slayer's Statute," Larkin would have received all of the insurance proceeds as the sole designated beneficiary.

Several pertinent events occurred after the mediated settlement of the first lawsuit. Teresa Larkin's body was exhumed and additional examinations led to a shift in the Teresa Larkin death investigation. Larkin eventually was charged and convicted of first degree murder in the death of Teresa Larkin.[3] In April 2011, Gentry, no longer a minor, sued Larkin in the Trial Court. In this April 2011 complaint, Gentry alleged, among other things, that Larkin had committed deceit and fraud in the inducement as to the settlement of her first lawsuit. Specifically, Gentry alleged that she, her counsel, her Guardian Ad Litem, and the Law Court for Washington County all were defrauded by Larkin's persistent denial of his

---

[1]Gentry, in her later lawsuit, states this figure actually was around $1,300,000.

[2]This appeal arises from the disposition of a motion to dismiss. We lack a trial transcript or statement of the evidence. However, we do have a transcript of the hearing on the motion to dismiss.

[3]We understand that Larkin has appealed his conviction for first degree murder.

having killed Teresa Larkin. Larkin filed a motion to dismiss, essentially arguing that the second lawsuit was the same as the first, save for the claim of fraudulent inducement, and that the matter had been resolved by the mediated settlement.

The Trial Court heard arguments from the parties' respective counsels on Larkin's motion to dismiss in September 2011. Subsequently, in October 2011, the Trial Court entered its order on Larkin's motion to dismiss, stating:

> The defendant has filed a Motion to Dismiss this action. He argues that this suit is essentially identical to a previous suit filed on behalf of the plaintiff against him which was subsequently settled and an Order entered thereon. (Gentry v. Larkin, Law Court of Johnson City, TN, Civil Action No. 23938). The Court agrees that the facts alleged in both cases are the same and that the settlement entered into between the parties was acknowledged as a "doubtful and disputed claim." The prior Order stated in paragraph 21 the following:
>
>> "This Order constitutes a full and final settlement of all causes of action of Tia Gentry by next friend Tony Garland Gentry and/or Tony Garland Gentry against the defendant, Dale K. Larkin, for any and all causes of action arising from the death of Teresa K. Larkin."
>
> In the new lawsuit, plaintiff asserts that the settlement in the previous lawsuit was obtained by the defendant on the basis of deceit and fraud in the inducement. However, as defendant points out, plaintiff's counsel is the same in both actions, plaintiff asserts now as she did then that Mr. Larkin was the perpetrator of her mother's death, and the investigation was ongoing into Ms. Larkin's death when the settlement was reached.
>
> It appears to the Court that this is a subsequent suit between the same litigants on the same cause of action with respect to all the issues which were or could have been brought in the former suit. The fact that Mr. Larkin has subsequently been convicted of first degree murder does not change that fact, as inequitable as it may seem. Therefore, the Court concludes that a Final Order has been entered in this cause and there are no grounds upon which this Court will set aside that Order. The Motion to Dismiss is granted. Court costs are taxed to the plaintiff.

Gentry appeals.

**Discussion**

We restate the issues Gentry raises on appeal as follows: 1) whether the Trial Court erred in failing to grant Gentry relief under Rule 60.02 of the Tennessee Rules of Civil Procedure; and, 2) whether the Trial Court erred in declining to find that Gentry was fraudulently induced by Larkin in the mediation agreement.

The Trial Court ruled on this case in the context of a motion to dismiss. However, we are not convinced that the Trial Court excluded considerations outside the pleadings in rendering its order. Therefore, we will treat the disposition of this case as though it were based on summary judgment, and we will apply the summary judgment standard of review as it applied to this case. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd*

*v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

The so-called "Slayer's Statute" or "Killing Statute," the law at the heart of this current controversy, provides:

> Any person who kills, or conspires with another to kill, or procures to be killed, any other person from whom the first named person would inherit the property, either real or personal, or any part of the property, belonging to the deceased person at the time of the deceased person's death, or who would take the property, or any part of the property, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right in the property, and the property shall go as it would have gone under § 31-2-104, or by will, deed or other conveyance, as the case may be; provided, that this section shall not apply to any killing done by accident or in self-defense.

Tenn. Code Ann. § 31-1-106 (2007).

Rule 60.02 of the Tennessee Rules of Civil Procedure, upon which, in part, Gentry seeks relief in this matter, provides:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or

(5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02.

We first address whether the Trial Court erred in failing to grant Gentry relief under Rule 60.02 of the Tennessee Rules of Civil Procedure. Both parties invoke the case of *Black v. Black*, 166 S.W.3d 699 (Tenn. 2005), wherein the Tennessee Supreme Court discussed allegations of fraud in the context of relief under Rule 60.02. In *Black*, a wife sued her husband two years after their divorce was finalized, claiming, among other things, that she had been coerced by her then husband into signing the marital dissolution agreement and that her husband had fraudulently stated his worth. *Id*. at 701-02. Husband filed a motion to dismiss for failure to state a claim, which the trial court granted. *Id*. at 702. Wife appealed. The Court of Appeals held that the wife's complaint was actually an independent action for relief under Rule 60.02 of the Tennessee Rules of Civil Procedure, but that wife had failed to articulate facts of extrinsic fraud as required. *Id*. The Tennessee Supreme Court affirmed the Court of Appeals, stating in relevant part:

A motion filed under Rule 60.02 "shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02; *see also Killion*, 845 S.W.2d at 213–14.

Because the Wife filed her complaint in the chancery court, rather than filing a motion in the circuit court within one year of the entry of the final divorce decree, the complaint cannot be considered as a motion for relief from the divorce decree under sections (1) though (5) of Rule 60.02.

Rule 60.02, however, also contains a "savings" provision, which clarifies that the rule "does not limit the power of a court to entertain *an independent action* to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court." See Tenn. R. Civ. P. 60.02 (emphasis added). Although there is no time limit for filing an independent action to set aside a judgment, it may be granted "only under unusual and exceptional circumstances" and "where no other remedy is available or adequate." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 229–30 (Tenn. Ct. App. 2000) (citing *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn. 1976)).

Although a motion to set aside a judgment for fraud under section 2 of Rule 60.02 may be based on intrinsic or extrinsic fraud, an independent action to set aside a judgment under the savings provision of Rule 60.02 requires extrinsic fraud. *Whitaker*, 32 S.W.3d at 230; *see also New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749, 751–53 (1956) (independent action to set aside judgment requires extrinsic fraud). Intrinsic fraud occurs "within the subject matter of the litigation," and it includes such things as falsified evidence, forged documents, or perjured testimony. *Whitaker*, 32 S.W.3d at 230. Extrinsic fraud, on the other hand, "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." *Nobes v. Earhart*, 769 S.W.2d 868, 874 (Tenn. Ct. App.1988). Examples of extrinsic fraud have included keeping a party from filing a lawsuit by falsely promising a compromise, keeping a party from knowing about a lawsuit, and an attorney's claiming to represent a party while acting in a manner opposed to the party. *See id*.

Although the Wife's complaint was entitled "Complaint for Damages for Fraud, Deceit, and Coercion" and sought relief in the form of compensatory and punitive damages, the Court of Appeals concluded that the substance of the complaint was an independent action under Rule 60.02 to set aside the final divorce decree entered on December 12, 2000. We agree.

The complaint alleges that the Husband acted fraudulently by withholding the identity and value of his property and securities before the MDA was executed on September 13, 2000. The allegations conflicted with the language of the MDA, which stated in part that the MDA was "fair and reasonable" and "not the result of any fraud, duress, or any undue influence exercised by either party herein upon the other, or by any other person or persons upon either of the parties." The allegations also conflicted with the language of the amended MDA, which was executed on November 29, 2000,

and which ratified and affirmed the provisions of the initial MDA. There is no dispute that both the MDA and the amended MDA were incorporated into the final divorce decree, which was entered by the circuit court on December 12, 2000. In sum, the complaint, even when viewed in a light most favorable to the Wife, was an independent action alleging fraud and seeking relief from the final divorce decree entered on December 12, 2000, in the Shelby County Circuit Court.

As a result, we further agree with the Court of Appeals' conclusion that the Wife's complaint did not allege sufficient facts to establish extrinsic fraud as required by the savings provision of Rule 60.02. As discussed above, the complaint alleged that the Husband "fraudulently concealed his true net worth" by withholding the identity and value of his property, securities, law practice, equipment and furnishings. Although these assertions concerned the subject matter of the litigation and may have been sufficient to establish intrinsic fraud had they been pursued within one year of the divorce decree under section 2 of Rule 60.02, there were no assertions of fraud indicative of "deception as to matters *not at issue in the case* " that "prevented the [appellant] from receiving a fair hearing." *See Nobes*, 769 S.W.2d at 874 (emphasis added).

*Black*, 166 S.W.3d at 703-04.

Thus, *Black* stands for the proposition that claims under Rule 60.02 for intrinsic fraud must be brought within a year from the judgment in question. Larkin argues that the type of fraud alleged by Gentry in this case is intrinsic, rather than extrinsic fraud, and we agree. Gentry alleges that Larkin committed fraud by denying his involvement in the death of Teresa Larkin. This allegation falls squarely within the definition of intrinsic fraud as it concerns the subject matter of the case. Therefore, under the provisions of *Black*, Gentry is not permitted to bring an independent action based on intrinsic fraud under the savings provision of Rule 60.02.

Gentry argues the statute of limitations should be tolled on account of her minority status at the time of the mediated settlement, citing Tenn. Code Ann. § 28-1-106, as well as Tenn. Code Ann. § 28-3-105. We disagree. First, we observe that Gentry raises this issue for the first time on appeal. Furthermore, Gentry, with her father acting on her behalf, with the assistance of her counsel and her Guardian Ad Litem, and with judicial approval, entered into a mediated settlement that purported to resolve all the causes of action arising from the death of Teresa Larkin. There were a number of safeguards in place to account for Gentry's minority. We do not believe that the statute of limitations governing either a claim for fraud or the limitation period on Rule 60.02 relief is tolled by minority

status where the minor, with all the requisite safeguards, entered into a judicially approved and mediated settlement. Such a result could undermine the integrity of all settlements entered into by minors acting through next friends and guardian ad litems, and would have a serious chilling effect as to parties settling lawsuits involving minors.

While our resolution of Gentry's first issue is dispositive, we, erring on the side of caution, will address whether the Trial Court erred in declining to find that Gentry was fraudulently induced by Larkin in the mediation agreement. Gentry argues strenuously that Larkin, by his denial of having killed Teresa Larkin, committed fraud and deceit, which, in light of his later conviction by jury for first degree murder in the death of Teresa Larkin, fatally undermines the mediated settlement in this case.

We, however, do not believe that what Gentry alleges constitutes actionable fraud. It is undisputed that Gentry never relied on Larkin's representation that he did not kill Teresa Larkin. Gentry instead has always maintained that Larkin did kill Teresa Larkin. Indeed, if Gentry believed Larkin's representation that he did not kill Teresa Larkin, then the result would be that Gentry would have been entitled to none of the insurance proceeds because Larkin was the sole named beneficiary. Gentry may now be dissatisfied with the settlement, but Larkin's murder conviction does not alter the fact that she, albeit as a minor through adult intermediaries, arrived at a bargained-for agreement that subsequently was duly approved and entered by the Law Court for Washington County. Both parties in this effectively winner-takes-all dispute risked losing at trial, and the agreement eliminated the risk of loss for both parties. Gentry has failed to persuade us that Larkin's assertions of innocence in the death of Teresa Larkin, assertions that apparently carry on today, deceitfully influenced her settlement as her entire case against Larkin has always rested entirely on a scenario whereby Larkin killed Teresa Larkin in a manner covered by the "Slayer's Statute." There was no reliance by Gentry on Larkin's assertions of innocence, and without any such reliance there can be no actionable claim for fraud. *See Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001).

Finally, we are aware that our decision may appear inequitable given the results. This Court is not happy with the results of our decision. We, however, are not free to decide cases based upon our personal preferences but instead must decide them based upon the law. This appeal presents a difficult and tragic set of facts. Nevertheless, the principle of the finality of judgments is deeply significant to our judicial system. Without high thresholds for attempts to overturn final judgments, our judicial system could collapse under the weight of perpetual re-attempts. A lack of certainty and resolution would prevail. Therefore, the circumstances by which a party may overturn a prior final judgment are narrow. With all evidence and inferences viewed in the best light in favor of Gentry, Larkin

is entitled to judgment as a matter of law.[4]  We affirm the judgment of the Trial Court in all respects.

---

[4]Larkin would have prevailed had we applied the standard of review for motions to dismiss, as well.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Tia Gentry, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE